David MERCKLING, Appellant

v.

Dr. Peter CURTIS, Appellee.

No. 01–94–00224–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 10, 1995.

Rehearing Overruled Oct. 5, 1995.

762

John H. Holloway, Houston, for Appellant.

John C. Marshall and Todd J. Broussard, Houston, for Appellee.

Before OLIVER–PARROTT, C.J., and TAFT and O'CONNOR, JJ.

## OPINION

TAFT, Justice.

Appellant, David Merckling, sued appellee, Dr. Peter Curtis, for medical malpractice. A jury found that Curtis was not negligent and awarded Merckling no damages. The trial court rendered judgment on the jury's verdict. On appeal, Merckling complains of errors in the jury charge, the sufficiency of the evidence, the exclusion of evidence, and the trial court's refusal to grant leave to file a trial amendment. We affirm.

### Background

Merckling injured his back in October 1985 while he was carrying heavy sales cases. He was hospitalized and diagnosed with an acute lumbosacral sprain and spondylolisthesis. He was treated by Dr. Alan Criswell, an orthopedist.[1] Merckling was hospitalized again in January 1986 for back pain. Because he continued to suffer pain in his groin, Criswell referred Merckling to Curtis, a general surgeon. Curtis examined Merckling and concluded that he had indirect hernias on both his left and right sides. Curtis recommended bilateral hernia repairs. On March 25, 1986, he performed the surgery on Merckling at West Houston Hospital.

After the surgery, Merckling continued to complain of pain in the right groin and right testicle. Curtis recommended he see a specialist in pain management, which he did. On December 2, 1986, another general surgeon, Dr. Ira Kasper, performed exploratory surgery on Merckling in the right groin area. Kasper severed the nerves in this area to alleviate Merckling's pain. While his pain improved temporarily, Merckling again complained of pain in the same area.

Merckling continued to be treated for the pain in his right groin and testicle. On February 14, 1988, he was admitted to Bellaire Hospital for surgery, again in an attempt to alleviate his pain. During surgery, his right testicle was removed and a prosthesis implanted. In late 1989, he had surgery because the prosthesis had ruptured.[2]

1. Merckling had a prior history of back problems in high school and in the military.

2. During this time, Merckling had other medical problems. In 1985, he was diagnosed with hypertension and with an ulcer. In 1985 through 1987, he went to the emergency room or was admitted to the hospital on several different occasions for bladder problems, sinus problems, food poisoning, stomach and gastric problems,

In 1987, Merckling sued Curtis for negligence. He alleged that Curtis had negligently entrapped a nerve with a suture during surgery. He alleged the entrapped nerve was the cause of the chronic pain in his right groin and testicle and the cause of his impotency problems. He further alleged that he did not give his informed consent for the hernia operation and that Curtis withheld or misrepresented the risks of the surgery. Trial began on August 31, 1993. At the conclusion of trial, the jury returned a verdict favorable to Curtis, finding no negligence and awarding no damages.

## Sufficiency of the Evidence

In points of error 13 through 16, Merckling contends the evidence established as a matter of law the issues of negligence and damages; alternatively, he contends the jury's failure to find negligence and damages was against the great weight and preponderance of the evidence.

### a. Standard of Review

■ When the party with the burden of proof challenges the legal sufficiency to support the jury's failure to find in its favor, it must show that no evidence supports the failure to find and the evidence establishes the desired finding as a matter of law. *Ramsey v. Lucky Stores, Inc.*, 853 S.W.2d 623, 632 (Tex.App.—Houston [1st Dist.] 1993, writ denied). A party attempting to overcome an adverse fact finding as a matter of law must surmount two hurdles. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989); *Neese v. Dietz*, 845 S.W.2d 311, 313 (Tex.App.—Houston [1st Dist.] 1992, writ denied). First, an examination of the record for evidence that supports the jury's finding, while ignoring all evidence to the contrary, must produce no evidence supporting the finding. *Sterner*, 767 S.W.2d at 690; *Neese*, 845 S.W.2d at 313. Second, if there is no evidence to support the fact finder's answer, then an examination of the entire record must demonstrate that the contrary proposition is established as a matter of law. *Sterner*, 767 S.W.2d at 690.

■ Only one standard of review is used in reviewing factual sufficiency challenges, regardless of whether the court of appeals is reviewing a negative or affirmative jury finding or whether the complaining party had the burden of proof on the issue. *M.J. Sheridan & Son v. Seminole Pipeline*, 731 S.W.2d 620, 623 (Tex.App.—Houston [1st Dist.] 1987, no writ). In reviewing a factual sufficiency complaint, we must first examine all of the evidence. *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986); *Hollander v. Capon*, 853 S.W.2d 723, 726 (Tex.App.—Houston [1st Dist.] 1993, writ denied). Having considered and weighed all of the evidence, we should set aside the verdict only if the evidence is so weak, or the finding is so against the great weight and preponderance of the evidence, that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Hollander*, 853 S.W.2d at 726. We cannot merely substitute our opinion for that of the trier of fact and determine that we would reach a different conclusion. *Hollander*, 853 S.W.2d at 726.

### b. Theories of Negligence

■ Merckling's theory at trial was that Curtis negligently entrapped one of the nerves in the inguinal area with a suture during surgery, causing pain in Merckling's right groin and testicle. He contended that Curtis' negligence led to the removal of his testicle and left him with chronic pain and impotency. He also contended that Curtis should have operated again shortly after the hernia repair to find the source of his pain. Finally, he contended that Curtis misdiagnosed his need for hernia surgery. Six doctors testified at trial; five were treating doctors, including Curtis, and one was an expert testifying on Curtis' behalf.

### c. The Evidence Refuting Negligence

Curtis testified that he did not entrap a nerve with a suture when he operated on Merckling and was not negligent.[3] When closing the external oblique fascia, which is the suture most likely to entrap a nerve, he

---

lower back pain, and an overdose on pain medication. In 1991, he was hospitalized for his addiction to pain medication.

3. Contrary to Merckling's assertion in his brief, Curtis did not judicially admit he could have entrapped a nerve with a suture.

cannot pick up a nerve in his running suture line, because his needle is under his direct vision at all times. He is able to verify as he goes along that a nerve is not entrapped. He testified that it is not a reasonable medical probability that if a nerve were sutured that it would cause Merckling's pain because there are surgeons who routinely ligate or cut the nerves in the inguinal canal during the course of a standard hernia repair. The most likely effect of an entrapped nerve is numbness in the area of the nerve's distribution. He testified that Merckling may have a problem with a nerve but not because he placed a suture around a nerve in the right groin area.

Curtis testified that Merckling had a fairly uneventful postoperative course. After surgery, Merckling complained of pain on both sides and did not differentiate the pain on one from the pain on the other. Curtis did not think that the pain was caused by an entrapped nerve because the pain subsided throughout his hospital stay. Therefore, he did not see any need to reexplore the area after surgery. He testified that a nerve block can possibly be used to detect pain in the nerve; however, it does not indicate that the pain is caused by a nerve being entrapped.

On his first postoperative visit, on April 2, 1986, Curtis noted Merckling's incisions were well-healed, and he removed the clips. Merckling did not complain of pain during this first visit. During his May 6, 1986, visit, Merckling complained that for the past week or so, he had burning pain in an area about a half-dollar size below the medial end of the incision on the right side. Curtis noted in the medical records that this pain is the same pain Merckling had *before* the operation and that it had returned after Merckling did some heavy lifting.[4] Curtis recommended Merckling see a physician who specializes in pain management.

Dr. Ira Kasper testified that Merckling first visited him on November 18, 1986, because he was having pain in his right groin, testicle, and down his right leg. He operated

on Merckling on December 2, 1986, to cut the nerves in the right inguinal area to alleviate Merckling's pain. He reopened Merckling's right groin area where Curtis had previously operated. He opened the external oblique fascia, separated the spermatic cord from the scar tissue, separated the nerve from the scar tissue, transected the nerve, and clipped it. He did not find any scar tissue that was tied up by a suture. He did not find any sutures around the nerve or any evidence that there had been one there. He assumed at that time that the scar tissue around the spermatic cord and around the nerve was causing Merckling's pain because the scar tissue was entrapping the right ilioinguinal and genitofermoral nerve and genital bundle. He testified that there is always scar tissue after surgery; it is a natural part of the healing process.

In reviewing Merckling's medical reports from Curtis, Kasper did not find anything atypical or unusual about the hernia surgery. He testified that the surgery Curtis performed was proper. He testified that Curtis used good, ordinary surgical care for a general surgeon and did not find that Curtis was negligent. After reviewing the medical records, Kasper noted that Curtis did not find indirect hernias but found lipomas, fatty tissues, that were pushing down on the inguinal canal the same way a hernia does. There is no way to distinguish a lipoma from a hernia during a physical exam. Thus, before surgery, a lipoma is defined as a hernia. He does not have any question that the operation performed by Curtis was proper. Curtis was not obliged to reoperate in the first two to four weeks after surgery. If the ilioinguinal or genitofermoral nerve were pulled tight by a suture, it would most likely destroy the nerve, causing the nerve to die and lose sensitivity; while there may be initial discomfort, the nerve would then retract and die.

During his surgery on Merckling, Kasper did not find any evidence that a suture or stitch had been placed by Curtis around any

4. Before his hernia operation, Merckling visited Curtis. His records show that on that visit, after continuing to lift heavy cases the week before, Merckling complained of severe right inguinal pain, with radiation to the medial side of the

thigh and some pain in the testicle. Merckling's wife also testified that he began to complain of testicular and groin pain after his back injury in October 1985, which was before the hernia operation.

nerve. In fact, there was evidence that a suture had not been placed around the nerve. His postoperative report stated that the ilioinguinal nerve was attached to the spermatic cord and not to the external oblique layer where a suture would have been placed. If a suture had been placed around the nerve, the nerve would have come up with the external oblique layer during the second surgery and would not have stayed attached to the spermatic cord. He also did not find that Curtis had closed too tightly and injured anything. His report shows that he found a large opening of the inguinal ring; therefore, Curtis had not made the ring too small when he closed.

Kasper also testified that, in reasonable medical probability, a patient would more likely experience numbness than ongoing pain if a nerve were sutured. Some surgeons who perform hernia repairs intentionally cut the nerves during the operation to prevent neuralgia, and a majority of surgeons in this country do not bother looking for the nerves because it is not a problem if the nerves are cut. He did not think that Merckling's pain in his right groin and testicle was caused by the inguinal nerves because he cut them in the second surgery and Merckling had the pain before and after *both* surgeries.

Dr. Lloyd Michael Lehrer testified by deposition.[5] He first saw Merckling in December 1986 at Kasper's request for a consultation. He treated Merckling initially with local injections of steroids into the two major nerves in the right groin, the ilioinguinal and the iliohypogastric nerves, and later with injections into the multiple neuromas, or nerve fibers, in the same area. Merckling did not have any neuromas in December 1986; Lehrer first found them in late 1987. He testified that Merckling's medical records show that he had right groin and testicle pain before Curtis operated. He also testified that lipomas are medically significant because they are a tissue mass that can create pressure in the areas where they are located.

Dr. Sam Axelrad testified that Merckling was referred to him by Lehrer because he had chronic pain in his right inguinal area and his right testicle. He admitted Merck-

ling to Bellaire Hospital on February 14, 1988. He operated on him on February 19, 1988, to alleviate his pain. He removed Merckling's right testicle during surgery. An associate in his office, Dr. Zvi Schiffman, also evaluated Merckling and participated in the operation. Axelrad testified that Schiffman did not think that the surgery would relieve all Merckling's pain. He did not think Merckling's pain was from the inguinal nerves or the hernia repair, but from another source, such as his back.

During surgery Axelrad found dense scar tissue from the two previous surgeries. The pathology on the removed testicle showed the spermatic cord had some fibrosis and the epididymis was inflamed. The inflammation was not due to any nerve entrapment but possibly due to the scar tissue or the vasectomy Merckling had 24 years before. Axelrad operated on Merckling again in August 1990 to remove the prosthesis that had ruptured in Merckling's right scrotum. There were no complications with this surgery.

Dr. Owen Cramer testified as an expert for Curtis. Based on his review of the medical records and depositions of some treating doctors, he testified that Curtis, in reasonable medical probability, provided good care to Merckling and was not negligent. Curtis did not do anything wrong that caused injury to Merckling. He testified that the medical records show that Merckling complained of pain in his right groin, testicle and upper thigh before the hernia repair. In his opinion, this pain was related to his back and was the same pain he had after the surgery. However, Merckling was still an appropriate candidate for hernia surgery when Curtis operated. Curtis did not misdiagnose Merckling. The operative report showed the operation was very routine.

Cramer testified that Curtis removed a lipoma from each side, and the protrusion on the right side was large. A lipoma is a complex of fat that, in this case, was protruding through the hole in the inside of the abdomen and along the blood supply going down the testicle. When the lipoma is protruding, the opening is enlarged and needs surgical repair. A hernia is a weakness in

5. He was deceased at the time of trial.

the body wall that allows the structures that are underneath to go through. Regardless of what material is protruding, the weakness or opening needs repair. Merckling was an appropriate candidate for hernia surgery when Curtis operated. Curtis did not misdiagnose Merckling. His initial diagnosis was that he had indirect hernias; however, there is no way to determine before operating whether what is protruding through the defect on both sides is a bowel or fat. The operation he performed was still a hernia repair.

In Cramer's opinion, it is unlikely that Curtis put a suture around any of the nerves in the area. Because Merckling's pain complaints were the same before and after Kasper's surgery in which he cut the nerves in the area, he believes his pain was not nerve related. There was no evidence that Curtis entrapped a nerve based on where Kasper found the nerves. If Curtis had sutured the nerves in the area, then during the second operation to cut the nerves, Kasper would have found the nerves attached to the upper surface or the external oblique muscle. However, he found them where they normally are found. If a suture was placed around the spermatic cord, the blood supply to the testicle would have been cut off and the testicle would have died. The fact that Merckling did not have constant pain, but instead had intermittent pain, suggests he did not have nerve entrapment. Knowing that Merckling had the same pain before and after the hernia surgery and knowing that he had the nerves severed, Merckling's pain had to come from some other source.

Cramer does not think it would be good standard medical practice to perform within five days, or even three months, an exploratory operation on a patient who was experiencing pain and discomfort after a hernia operation; he would not reexplore anyone within six months. He further testified that there are no significant postoperative tests to determine whether a nerve was entrapped during surgery. A nerve block can anesthetize the area and provide relief but does not tell the doctor what exactly is going on with the patient.

### d. Legal Sufficiency

This evidence supports the jury's failure to find negligence. The evidence shows that (1) Merckling had pain in his right groin and testicle before Curtis operated; (2) Curtis did not place a suture around any nerve in the inguinal area; (3) Curtis was not negligent by not reoperating on Merckling shortly after the hernia repair; and (4) the hernia operation was appropriate. Therefore, Merckling has not shown that no evidence supports the jury's failure to find that Curtis was negligent. *Ramsey,* 853 S.W.2d at 632. Because there is evidence to support the jury's verdict, Merckling cannot show negligence is established as a matter of law. *Id.*

To determine the factual sufficiency of the evidence, we must now review the entire record to see if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain,* 709 S.W.2d at 176; *Hollander,* 853 S.W.2d at 726. Having already reviewed the evidence refuting negligence, we now examine the evidence supporting negligence.

### e. Evidence Supporting Negligence

Dr. Houman, a urologist in California,[6] testified by deposition. He first began treating Merckling in October 1987 with nerve blocks to alleviate his pain. He testified that if the usual care was used in performing Merckling's hernia operation, he would not have the type of severe pain or discomfort that he suffered postoperatively. When asked what in his opinion, based on reasonable medical probability, caused Merckling's pain, he testified that there are two possibilities: one is ilioinguinal nerve entrapment and the other is a tightening of the inguinal ring. He testified that there is no evidence of a tightening of the ring; therefore, he believed that there was great likelihood or some degree of medical certainty that Merckling had entrapment of the nerve caused by a suture, scar tissue, or something else. He thinks there is a great possibility that it could have been a suture because Merckling had bilateral surgery and he did not have any problems on the left side.

6. Merckling moved to California for a period of time due to his job.

When asked if the standard of care of a reasonably prudent doctor exercising ordinary care would require him to reoperate within a week to 10 days to remove the entrapped nerve, Houman responded that it is the surgeon's choice, but he thinks it is wise and would reoperate. He testified that Curtis' operative report described what is considered a bilateral hernia operation.

Dr. Houman also testified that the only information about Merckling he had is what Merckling told him, his own records of Merckling, and records from local California hospitals to which Merckling has been admitted. He did not have any records from any Houston doctors or hospitals. Merckling's impotency problems could be related to the hernia surgery. His opinion regarding Merckling's impotency is not based on any tests performed but from what Merckling has told him.

The late Dr. Lehrer testified that Merckling began having severe right inguinal pain with radiation into the testicle almost immediately following hernia surgery. However, he also testified that his knowledge of this was based on what Merckling told him and not on any medical records. He testified that there were objective findings to support the presence of a nerve entrapment based on his examination and Kasper's examination of Merckling, but these examinations occurred almost eight months after surgery.

### f. Factual Sufficiency

In weighing this testimony supporting negligence against the testimony of the other five doctors that refuted negligence, we find that the jury's finding was not against the great weight and preponderance of the evidence.

### g. Summary

■ Because we find the jury's failure to find negligence is supported by legally and factually sufficient evidence, we find that the jury's failure to answer the damages question was proper. When the jury finds there was no negligence, its failure to award damages is not error. *Johnson v. Whitehurst*, 652 S.W.2d 441, 449 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e).

We overrule points of error 13 through 16.

### Jury Charge

In points of error one through 10, 12, and 17, Merckling contends the trial court abused its discretion by refusing to submit numerous questions in the jury charge.

### a. Standard of Review

■ To determine whether an alleged error in the jury charge is reversible, we must consider the pleadings, the evidence presented at trial, and the charge in its entirety. *Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex.1986). Error in the charge is reversible only if harmful, that is, if it caused or was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. *Id.; Winfield v. Renfro*, 821 S.W.2d 640, 644 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

### b. Gross Negligence

■ In point of error 17, Merckling contends the trial court abused its discretion by refusing to submit his jury questions on gross negligence and punitive damages.

The gross negligence and punitive damages questions were predicated on the jury's affirmative answer to the negligence and damages questions. We have held that there was no error in the jury's failure to affirmatively answer the negligence and damages questions. Therefore, we find any error by the trial court in refusing to submit the gross negligence and punitive damages questions was harmless. *See Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 716–17 (Tex.App.—Houston [1st Dist.] 1988, writ denied) (any error in trial court's refusal to submit question was harmless where jury did not find misrepresentation, needed as predicate to recovery); *Rogers v. Gonzales*, 654 S.W.2d 509, 515 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e) (any error in refusing an amendment or issue on mental anguish was harmless when jury did not find negligence, needed as predicate to recovery).

We overrule point of error 17.

### c. Liability for Negligence of Other Doctors Question

■ In point of error one, Merckling contends the trial court abused its discretion by

refusing his requested instruction that Curtis would be liable for the negligence of other doctors who treated him after the hernia operation.

■ A trial court must submit such explanatory instructions as necessary to enable the jury to render a verdict. TEX. R.CIV.P. 277. Rule 277 gives the trial court wide discretion in deciding what instructions are necessary and proper to submit to the jury. *Mobil Chem. Co. v. Bell,* 517 S.W.2d 245, 256 (Tex.1974). A trial court's refusal to submit requested instructions will not be reversed on appeal unless the court abused its discretion. *Magro v. Ragsdale Bros., Inc.,* 721 S.W.2d 832, 836 (Tex.1986).

Merckling requested the following instruction that was refused by the trial court:

> In answering the issues (question) submitted to you, you are instructed that one who wrongfully or negligently injures a person is liable in damages for [the] consequences of the negligence in treatment of injuries by a doctor or surgeon selected by the injured person in good faith and with ordinary care.[7]

Merckling relies on *Galvan* to support his contention that the definition should have been submitted to the jury. In *Galvan,* the court of appeals reversed the case because it held that it was harmful error to submit the definition of new and independent cause to the jury when there was no evidence to support its submission. 678 S.W.2d at 598–99. That is not the issue here, and therefore, *Galvan* does not apply to the facts of this case.

We find any error by the trial court in not submitting the instruction is harmless because the jury failed to make the predicate finding that Curtis was negligent. *See Adams,* 754 S.W.2d at 716–717; *Rogers,* 654 S.W.2d at 515.

We overrule point of error one.

**d. Informed Consent Questions**

■ In point of error two, Merckling contends the trial court abused its discretion by refusing to submit the theory of informed consent to the jury because it was raised by the evidence and pleadings.

■ A party is entitled to a jury question if the issue is raised by the pleadings and the evidence. TEX.R.CIV.P. 278; *Otis Elevator v. Shows,* 822 S.W.2d 59, 62 (Tex.App.—Houston [1st Dist.] 1991, writ denied). Rule 278 provides a substantive, nondiscretionary directive to trial courts requiring them to submit requested questions to the jury if the pleadings and any evidence support them. *Elbaor v. Smith,* 845 S.W.2d 240, 243 (Tex. 1992).

Merckling submitted several questions on informed consent. One question asked the jury whether Curtis failed to obtain his informed consent for hernia surgery. The question instructed the jury that one of the inherent risks of the surgery was injury to the inguinal nerves with sutures and instructed them that if they found that a nerve was injured by a suture, then they had to find there was not informed consent. The second tendered question asked whether Merckling suffered any injury as a proximate cause of being submitted to the hernia surgery without his informed consent as to the risks inherent in inguinal nerve injuries from sutures. The third question asked whether the failure to obtain his informed consent as to the risks of nerve entrapment with a suture was negligence. The fourth question asked whether being advised of the risks of nerve injury from nerve entrapment by sutures could influence a reasonable person to withhold his consent to the hernia surgery. Merckling argues that informed consent is a separate and distinct issue from ordinary negligence because recovery of damages can exist under the theory without a finding of negligence in performance of the operation.

■ The issue of informed consent is governed by the Medical Liability and Insurance Improvement Act. TEX.REV.CIV.STAT. ANN. art. 4590i, §§ 6.01–.07 (Vernon Pamp. 1995). Section 6.03 of the Act created the Texas Medical Disclosure Panel. TEX.REV. CIV.STAT.ANN. art. 4590i, § 6.03 (Vernon

---

**7.** It is a true statement of the law that one who wrongfully injures another is liable in damages for the consequences of the treatment given by physicians selected in good faith and with ordinary care by the injured party. *Galvan v. Fedder,* 678 S.W.2d 596, 598 (Tex.App.—Houston [14th Dist.] 1984, no writ).

Pamp.1995). The panel's responsibility is to evaluate all medical and surgical procedures, determine whether disclosure of risks is required, and if so, how much disclosure is required. TEX.REV.CIV.STAT.ANN. art. 4590i, § 6.04(a) (Vernon Pamp.1995); *Peterson v. Shields*, 652 S.W.2d 929, 931 (Tex.1983). Once evaluated, each procedure is then placed on either List A or List B. List A procedures require some disclosure of the risks involved in the treatment; List B procedures require no such disclosure. TEX. REV.CIV.STAT.ANN. art. 4590i, § 6.04.

■ Proper disclosure of risks in medical procedures found on List A, or nondisclosure for medical procedures on List B, creates a rebuttable presumption that the physician was not negligent. TEX.REV.CIV.STAT. art. 4590i, § 6.07 (Vernon Pamp.1995); *Peterson*, 652 S.W.2d at 931. If a procedure is not on either list, then the doctor is under the duty otherwise imposed by law. TEX.REV.CIV. STAT.ANN. art. 4590i, § 6.07(b). That duty is to disclose all risks and hazards which could influence a reasonable person in making his or her decision to consent to the procedure. *Peterson*, 652 S.W.2d at 931.[8] Thus, the materiality of the risk is decided by the panel before trial. *Id.*

In 1982, when the panel disclosed its first schedule of List A and List B procedures, inguinal hernia was a List B procedure. 7 Tex.Reg. 4229 (1982) (repair to inguinal hernia is the number seven procedure under the digestive system section of List B). When the panel again disclosed its schedule of List A and List B procedures in May 1984, the inguinal hernia repair was still a List B procedure. 9 Tex.Reg. 2890 (1984). The inguinal hernia repair remained a List B procedure when Curtis performed the inguinal repair on Merckling in March 1986. *See* 12 Tex.Reg. 3636 (October 1987). Curtis was under no duty to disclose any risk of surgery, and at trial, a rebuttable presumption existed that he was not negligent.

After reviewing the testimony regarding consent and the risk of nerve entrapment with a suture, we find that Merckling did not rebut the statutory presumption that Curtis was not negligent by not disclosing any risk of nerve entrapment by sutures. Curtis testified he told Merckling of certain risks associated with the surgery. He told him that the risk is small but present that the intestine, bowel, or whatever the contents of the sac may be, can become trapped, lose their blood supply, and cause gangrene. He discussed the risk of hernia recurrence, the most common complication. He did not tell Merckling that there was a risk of nerve entrapment or loss of blood supply to a testicle because the likelihood of that occurring is incredibly rare. He did not tell Merckling that he could have long-lasting severe pain in his groin because the likelihood of that is trivial. In the almost 1000 hernia operations he has performed, no patient had persistent pain after surgery. Merckling signed a consent form before surgery, and the form was admitted into evidence.

Kasper testified that he tells his patients of the risks that are more likely to happen and not every conceivable risk. He testified that about one percent of hernia patients end up having some postoperative pain or neuralgia, which is a pain syndrome in a specific nerve group. He testified that recent studies show that it does not make a difference in terms of causing neuralgia whether a doctor entraps nerves in a suture, ignores the nerves, or cuts them.

Cramer testified that he tells hernia patients the risks of bleeding, infection, pain, removal of the testicle, or the testicle dying. He tells them that nerves may be transected, if necessary, and that they may experience an area of numbness.

This is the only testimony regarding the risks associated with the surgery that doctors tell hernia patients. There was no testimony that the risk of nerve entrapment with a suture is an inherent risk or that the risk should be disclosed. In short, there was no testimony to rebut the statutory presumption

**8.** If no presumption has been established by the Act, a plaintiff must prove, by expert testimony, that the medical condition complained of is a risk inherent in the procedure performed. *Peterson*, 652 S.W.2d at 931. The expert should also testify to the facts concerning the risk that show that knowledge of the risk could influence a reasonable person in making a decision to consent to the procedure. *Id.*

that Curtis was not negligent in disclosing risks to Merckling.

Because Curtis did not have the duty to disclose the risk under article 4590i, section 6.07 and because Merckling did not rebut the statutory presumption that Curtis was not negligent, the trial court did not abuse its discretion by refusing Merckling's informed consent issue.

We overrule point of error two.

### e. Specific Negligence Questions

▬ In points of error four through nine, Merckling contends the trial court abused its discretion by refusing to submit to the jury several specific questions regarding negligence. Conversely, in point of error 12, he contends the trial court erred by submitting only one broad form negligence question to the jury.

The negligence question submitted to the jury asked, "Did the negligence, if any, of Dr. Peter Curtis proximately cause injury to David Merckling?" The jury charge included definitions of negligence, ordinary care, and proximate cause. The jury answered "no" to the negligence question.

Merckling tendered 13 separate negligence questions, many with subparts, that the trial court refused. The negligence questions asked the jury whether Curtis was negligent (1) by entrapping a nerve with a suture during the hernia operation; (2) by failing to explore the area surgically to determine whether nerves were entrapped by sutures or otherwise; (3) by failing to diagnose or treat Merckling for nerve entrapment by suture after surgery; and (4) by failing to perform nerve block tests after surgery. Merckling contends the global submission of a single broad form liability issue deprived him of findings on these factual issues.

▬ A trial court shall, whenever feasible, submit the cause to the jury in broad form submissions. TEX.R.CIV.P. 277, 278. Rule 277 mandates broad form submissions "whenever feasible," that is, in any or every instance in which it is capable of being accomplished. *Keetch v. Kroger,* 845 S.W.2d 262, 266 (Tex.1992); *Texas Dep't of Human*

Serv. v. E.B., 802 S.W.2d 647, 649 (Tex.1990). Thus, unless extraordinary circumstances exist, a court must submit broad form questions to the jury. *Id.* And, in fact, the trial court errs if it refuses to submit a proper broad form question with appropriate instructions, and instead submits separate, granulated issues to the jury. *H.E. Butt Grocery Co. v. Warner,* 845 S.W.2d 258, 260 (Tex.1992).

In *Mobil Chem. Co. v. Bell,* 517 S.W.2d 245, 255 (Tex.1974), the supreme court explained what former TEX.R.CIV.P. 277 meant: [9]

> The rule means that in an ordinary negligence case, where several specific acts of negligence are alleged and evidence as to each is introduced, the submission of a broad issue inquiring generally whether the defendant was negligent is not error and not subject to the objection that the single issue inquires about several elements or issues.

Thus, even under the former rule 277, which was more discretionary, it was not error to submit a broad form negligence question.

In *Texas Department of Human Services v. E.B.,* the supreme court reiterated that present rule 277 meant what it said: simply ask whether the party was negligent. 802 S.W.2d at 649. The court noted that the current rule put to rest any lingering questions about the use of broad form submission and eliminated a trial court's discretion to submit separate questions. *Id.* We find the trial court ruled properly in refusing Merckling's' questions, and submitting one broad form negligence question instead.

▬ Moreover, four questions tendered to the trial court by Merckling asked the jury whether Curtis was negligent in failing to submit him to nerve block tests after the hernia surgery. A party is entitled to a jury question if the issue is raised by the pleadings and the evidence. TEX.R.CIV.P. 278; *Otis Elevator v. Shows,* 822 S.W.2d 59, 62 (Tex.App.—Houston [1st Dist.] 1991, writ denied). Here, the record shows Merckling did

---

9. Former TEX.R.CIV.P. 277 was more discretionary than the current rule and provided, in part: "It shall be discretionary with the court whether

to submit separate questions with respect to each element of a case or to submit issues broadly."

not plead Curtis was negligent by failing to perform nerve block tests after surgery and did not offer a trial amendment on this issue. Therefore, the trial court did not abuse its discretion by refusing to submit the four questions regarding nerve block testing.

Similarly, four refused questions asked the jury separately about negligence and proximate cause. The supreme court has approved submitting the issues of proximate cause and negligence in a single question. *Lemos v. Montez,* 680 S.W.2d 798, 799 (Tex. 1984). Therefore, the trial court did not abuse its discretion in refusing to submit these questions to the jury.

Citing *Texas Department of Human Services v. E.B.,* Merckling argues that submitting a single broad form liability question in this case was not feasible. He argues that he was denied the essential determination of different concepts of negligence because the jury did not have guidance on the liability issues to be decided. We disagree. This case does not present any extraordinary circumstances that precluded the trial court from simply asking the jury whether Curtis was negligent. *Texas Dep't of Human Serv.,* 802 S.W.2d at 649.

We overrule points of error four through nine and 12.

### f. Misdiagnosis Questions

In point of error 10, Merckling contends that the trial court abused its discretion by refusing to submit questions to the jury that asked the jury if Curtis negligently diagnosed him as having bilateral hernias. We disagree. The refused questions again asked the jury about a specific act of negligence, *i.e.,* did Curtis negligently diagnose Merckling. Therefore, as we held in the previous points of error, the trial court properly refused the questions and submitted one broad form negligence question to the jury. *Texas Dep't of Human Serv.,* 802 S.W.2d at 649.

In point of error 11, Merckling contends the trial court abused its discretion by denying his motion for leave to file a trial amendment on the issue of whether Curtis negligently diagnosed him as suffering from bilateral hernias and negligently failed to advise him that his pain may be caused by his back. He contends this theory was raised by the evidence and was tried by consent.

Unpleaded claims or defenses that are tried by express or implied consent of the parties are treated as if they had been raised by the pleadings. *Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 495 (Tex. 1991); *Jaime v. St. Joseph Hosp. Foundation,* 853 S.W.2d 604, 607 n. 1 (Tex.App.— Houston [1st Dist.] 1993, no writ); Tex. R.Civ.P. 67. A party, upon leave of court, may amend its pleadings to include issues tried by consent at any time up to the submission of the case to the court or jury, but failure to amend will not affect the result of the trial of these issues. Tex.R.Civ.P. 67.

We need not decide whether the trial court abused its discretion by refusing to allow Merckling to amend or whether the evidence raised the issue. We find any error the trial court committed by refusing to allow Merckling to amend his pleadings during trial was harmless. The jury was asked a broad form negligence question; therefore, it was free to consider all the evidence to determine whether Curtis was negligent. Moreover, because we held that the trial court properly submitted a broad form question, a separate issue on negligent misdiagnosis would not have been a proper submission.

We overrule points of error 10 and 11.

### g. Misrepresentation Jury Question

In point of error three, Merckling contends the trial court abused its discretion in refusing to submit his issues regarding the negligence of Curtis in withholding and misrepresenting facts related to the hernia surgery and postoperative complications. Merckling's refused questions asked the jury whether Curtis negligently or intentionally withheld or misrepresented the fact that his postoperative pain could be caused by entrapment of the nerve by a suture, and if so, whether such acts or omissions proximately caused injury to him.

To the extent Merckling complains under this point that the trial court erred by not submitting a question as to whether Curtis withheld or misrepresented the risks of the surgery *before* he performed the operation, the point is overruled. First, the only writ-

ten questions tendered by Merckling regarding this issue asked the jury about any misrepresentations or omissions made *after* the operation. Therefore, we will confine our discussion of this point to any misrepresentations or omissions made after the hernia surgery. Second, the only theory on which Merckling could have recovered for Curtis' failure to disclose the risks or to fully inform him of the risks of surgery is negligence. TEX.REV.CIV.STAT.ANN. art. 4590i, § 6.02 (Vernon Pamp.1995); *see McKinley v. Stripling,* 763 S.W.2d 407, 409 (Tex.1989).

Merckling tendered questions that asked the jury (1) whether Curtis negligently or intentionally misrepresented to Merckling the fact that his postoperative pain could not be caused by nerve entrapment with a suture during the hernia operation; or (2) whether Curtis negligently or intentionally withheld from Merckling the fact that his postoperative pain could be caused by nerve entrapment with a suture during the hernia operation.

A party is entitled to a jury question if the issue is raised by the pleadings and the evidence. TEX.R.CIV.P. 278; *Shows,* 822 S.W.2d at 62. After reviewing the evidence, we find there is no evidence that Curtis intentionally misrepresented or concealed information from Merckling about the possibility of nerve entrapment by a suture. There was no evidence that Curtis knew that Merckling's pain was caused by a suture entrapment but did not tell him. Curtis testified that he did not entrap a nerve by a suture and did not think suture entrapment was the cause of Merckling's pain. Curtis' testimony was supported by Kasper. He testified that, based on where he found the nerves during the second operation, there was evidence that the nerves were not entrapped with a suture by Curtis.

The refused questions also asked about negligent misrepresentations. Again, these questions basically asked the jury whether Curtis negligently misdiagnosed Mercklings' postoperative pain and thus asked about a specific act of negligence. Therefore, the issue was properly submitted in the broad form negligence question.

We overrule point of error three.

## Exclusion of Evidence

In point of error 18, Merckling contends the trial court abused its discretion by refusing to admit the testimony of Curtis' expert witness on the risks of hernia surgery.

The admission and exclusion of evidence is committed to the trial court's sound discretion. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753–754 (Tex.1995); *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989). For the exclusion of evidence to constitute reversible error, a party must show the trial court committed error and the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *McCraw v. Maris,* 828 S.W.2d 756, 757 (Tex.1992); *Marcuz v. Marcuz,* 857 S.W.2d 623, 625 (Tex.App.—Houston [1st Dist.] 1993, no writ); TEX.R.APP.P. 81(b)(1). The challenging party does not need to prove that but for the exclusion of evidence a different judgment would have necessarily been rendered, but only that the error probably resulted in an improper judgment. *Alvarado,* 897 S.W.2d at 753–54; *McCraw,* 828 S.W.2d at 758.

A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted. *Alvarado,* 897 S.W.2d at 753–54; *GT & MC, Inc. v. Texas City Ref., Inc.,* 822 S.W.2d 252, 257 (Tex.App.—Houston [1st Dist.] 1991, writ denied). We determine whether the case turns on the evidence excluded by reviewing the entire record. *Alvarado,* 897 S.W.2d at 753–54; *Gee,* 765 S.W.2d at 396. The exclusion of cumulative evidence is not reversible error. *Reina v. General Accident Fire & Life Assurance Co.,* 611 S.W.2d 415, 417 (Tex.1981).

During cross-examination of Curtis' expert witness, Dr. Owen Cramer, Merckling's attorney asked him whether he would tell his patients undergoing hernia operations that under the standard of care for the community, there is no risk of permanent injury or any permanent residual problems. Curtis' attorney objected to the question, and the trial court sustained the objection. Merck-

ling offered a bill of exception. Excerpts from the bill of exceptions follow:

Q: Dr. Cramer, with your medical knowledge, if any, of the risk of hernia operations, if the patient is advised by the doctor that there is no risk of any permanent injury if this surgery is performed, in your opinion, would that be a false statement?
A: That would be false.
Q: Secondly, if the statement is made, could you as a physician, reasonably believe that a lay person, not medically trained or knowledgeable about the risk of surgery of a hernia repair, would rely upon that information from his attending physician?
A: Yes.
Q: All right. Would you consider this statement that there are no risks of permanent injury from a hernia surgery to be a misrepresentation of fact if it's made to a patient by a physician?
A: It certainly misrepresents the potential for a problem. That's true.

This excluded evidence addressed whether Curtis should have disclosed to Merckling the risk of permanent injury from the hernia surgery. Merckling testified that Curtis told him the hernia surgery was very simple and the complications are usually zero to none. He testified on direct examination:

Q: All right. But I'm trying to find out, basically, did he tell you at that time that there was any risk of complications or long-term problems that might have been associated with surgery itself?
A: No, sir. He guaranteed me that it was a very simple operation and that I wouldn't have any problems from it at all.

Merckling testified that if Curtis had disclosed the risk that the inguinal ring could be closed too tightly so that it compromises the blood supply to the testicle or injures the nerve or that a suture could permanently injure the nerve, he would not have consented to the surgery. He also testified that he feels Curtis misrepresented the risks of the surgery.[10] Mrs. Merckling testified that Curtis did not volunteer that there was any risk of permanent injury from the surgery.

Merckling argues the excluded testimony supports his misrepresentation and fraud theory. We noted under point of error three that Merckling only submitted questions regarding misrepresentations or omissions made *after* surgery. The excluded testimony only discusses misrepresenting the risks of surgery *before* the hernia operation. Here, the judgment did not turn on the excluded evidence because Merckling did not submit any questions to the trial court regarding misrepresentations before the surgery. Therefore, even if it were error, it was harmless error to exclude the testimony.

We overrule point of error 18.

## Conclusion

We affirm the trial court's judgment.

that Curtis was not guaranteeing the results of the surgery.

---

10. Merckling testified that, before the surgery, he signed the consent form that disclosed certain risks to him and that the consent form provided