Diana PETERSON, Petitioner,

v.

William E. SHIELDS, Respondent.

No. C–1788.

Supreme Court of Texas.

May 18, 1983.
Rehearing Denied July 20, 1983.

Lesher & Dozier, Mark Lesher, Texarkana, Kronzer, Abraham, Watkins, Nichols, Ballard & Friend, John R. Leach, III, Houston, for petitioner.

Bailey, Williams, Westfall, Lee & Fowler, Kevin J. Keith, Dallas, for respondent.

CAMPBELL, Justice.

This is a medical malpractice case. Diana Peterson sued Dr. William Shields for failing to disclose a risk of nerve damage when he obtained her consent to perform a lymph node biopsy. The trial court directed the verdict for Dr. Shields because Ms. Peterson's only expert witness testified he was not familiar with the standard of care expected of physicians in Texarkana, Texas, or a similar community. The court of appeals affirmed the trial court judgment in an unpublished opinion. Tex.R.Civ.P. 452. We reverse the judgments of the courts below and remand the cause to the trial court.

Dr. Shields is a board certified general surgeon practicing in Texarkana, Texas. Ms. Peterson consulted Dr. Shields in January of 1979 after discovering lumps on her neck. Dr. Shields recommended a lymph node biopsy and Ms. Peterson consented. Dr. Shields did not inform Ms. Peterson of the possibility that such a surgery might damage or traumatize the accessory nerve in her neck. The surgery was performed on January 17, 1979, and soon thereafter Ms. Peterson began experiencing some impairment of the functions of her right shoulder and arm. When she discovered her problems resulted from accessory nerve damage, she brought this suit, claiming Dr. Shields' failure to inform her of the risk of nerve damage prevented her from giving an informed consent to the operation.

The only expert testimony offered at trial by Ms. Peterson was that of Dr. Durcan, an otolaryngologist (ear, nose and throat specialist) certified by the Royal College of Surgeons, who has practiced in Houston for 20 years. Dr. Durcan testified he was not familiar with the standard of care expected of physicians performing lymph node biopsies in Texarkana or a similar community. On the basis of this admission, the trial court struck Dr. Durcan's testimony from the record and, because Ms. Peterson offered no other expert testimony regarding the applicable standard of care, directed the verdict for Dr. Shields.

The trial court relied on the common law "locality rule" when it struck Dr. Durcan's testimony and directed the verdict for Dr. Shields. The rule is set out in *Wilson v. Scott,* 412 S.W.2d 299, 302 (Tex.1967):

The plaintiff had the burden to prove by expert medical evidence what a reasonable medical practitioner of the same school and same or similar community under the same or similar circumstances would have disclosed to his patient about the risks incident to a proposed diagnosis or treatment, that the physician departed from that standard, causation and damages.

Thus, the common law focused on the physician, rather than the patient. The reasonableness of the physician's disclosure was determined by the standards followed by other physicians in the same or a similar community. The common law allowed the doctors to set the standards against which their conduct would be measured in a malpractice suit. Trichter and Lewis, *Informed Consent: The Three Tests and a Modest Proposal for the Reality of the Patient as an "Individual,"* 21 S.Tex.L.J. 155, 162 (1981). Under the common law, the plaintiff was required to offer expert testimony on the standard of care in the same or a similar community; without such testimony, there was no evidence to support the submission of special issues on negligence to the jury. *Hart v. Van Zandt,* 399 S.W.2d 791 (Tex.1965).

Our question is whether the common law locality rule applies to Ms. Peterson's cause of action. We hold it does not. In 1977, the legislature enacted the Medical Liability and Insurance Improvement Act. Tex.Rev. Civ.Stat.Ann. art. 4590i. Section 6.02 of the Act provides:

In a suit against a physician or health care provider involving a health care liability claim that is based on the failure of the physician or health care provider to disclose or adequately to disclose the risks and hazards involved in a medical care or surgical procedure rendered by the physician or health care provider, the only theory on which recovery may be obtain-

ed is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent.

■ Section 6.02 replaces the common law locality rule with a "reasonable person" rule. This reasonable person rule focuses on the disclosures which would influence a reasonable person in deciding whether to consent to a recommended medical procedure, rather than the disclosures the doctors in a certain community deem material. Richards and Rathbun, *Informed Consent and the Texas Medical Disclosure Panel,* 46 Tex.B.J. 349, 350 (1983). As a consequence, for medical care or surgical procedures performed after August 29, 1977, the effective date of the Act, it is no longer necessary to introduce expert testimony regarding the standard of care in a certain community. Furthermore, The Texas Medical Disclosure Panel, created by section 6.03 of the Act, will eliminate the need for expert medical testimony regarding the materiality of the risk in most cases. The panel is required to evaluate every medical and surgical procedure, determine whether disclosure is required, and, if so, how much disclosure is required. Tex.Rev.Civ.Stat.Ann. art. 4590i § 6.04(a). Once evaluated, each procedure is placed on one of two lists. List A contains all procedures which require some disclosure. List B contains all procedures which require no disclosure. Proper disclosure of risks in medical procedures found on List A, or nondisclosure for medical procedures found on List B, creates a rebuttable presumption that the doctor was not negligent. Tex.Rev.Civ.Stat.Ann. art. 4590i § 6.07. Failure to disclose risks in medical procedures found on List A will create a rebuttable presumption that the doctor was negligent. *Id.* In either case, the materiality of the risk will be decided prior to trial by the panel.

■ However, neither of the presumptions is applicable to Ms. Peterson's case because the panel had not evaluated and published their determination of the type of disclosure required in lymph node biopsies at the time the surgery was performed on her. If no determination regarding a duty of disclosure has been made by the panel, section 6.07(b) of the Act provides "the physician . . . is under the duty otherwise imposed by law." We hold the "duty otherwise imposed by law" to be the duty imposed by section 6.02 of the Act: to disclose all risks or hazards which could influence a reasonable person in making a decision to consent to the procedure.

■ If no presumption has been established by the Act, the plaintiff must prove, by expert testimony, that the medical condition complained of is a risk inherent in the medical procedure performed. The expert should also testify to all other facts concerning the risk which show that knowledge of the risk could influence a reasonable person in making a decision to consent to the procedure.

■ Ms. Peterson has raised a fact question on whether the risk of injury to the accessory nerve could influence a reasonable person in making the decision to undergo surgery. Dr. Durcan testified that nerves "must be treated with the utmost gentleness." Dr. Durcan also testified the accessory nerve "could be either cut or traumatized . . . by the manipulations necessary to free the lymph glands . . . if they were adherent to the structure." When asked whether there is a risk to the accessory nerve during a lymph node biopsy, Dr. Durcan testified: "Yes. There is a definite risk." We hold a directed verdict was improper.

We reverse the judgments of the courts below and remand the cause to the trial court.