**Milton BARCLAY, Appellant,**

v.

**W. Lawrence CAMPBELL, M.D., Appellee.**

**No. 05–83–00981–CV.**

Court of Appeals of Texas, Dallas.

Nov. 29, 1984.

Rehearing Denied Jan. 4, 1985.

Paula Fisette, Law Offices of Windle Turley, P.C., Dallas, for appellant.

Maureen Murry, Thompson & Knight, Dallas, for appellee.

Before GUITTARD, C.J., and STEPHENS and ROWE, JJ.[1]

---

1. Justice Rowe participated in this opinion although he resigned from the court before the

STEPHENS, Justice.

Milton Barclay sued W. Lawrence Campbell, M.D., for medical malpractice, alleging that the doctor negligently prescribed certain neuroleptic medications in connection with Barclay's psychiatric treatment, and that the doctor negligently failed to disclose to Barclay certain risks associated with the prescribed medications. At the conclusion of Barclay's case, the trial court granted Dr. Campbell's motion for a partial directed verdict, relating to the issue of informed consent, and submitted the case to the jury on the remaining negligence issues. In response to the jury's answers to special issues, finding that Dr. Campbell was not negligent in his treatment of Barclay, the trial court entered a take-nothing judgment against Barclay.

On appeal, Barclay, in a single point of error, contends that the trial court erred by instructing a verdict in favor of Dr. Campbell on the issue of informed consent. We disagree and, accordingly, we affirm the judgment of the trial court.

Dr. Campbell started treating Barclay in January of 1978 for mental illness which soon thereafter required Barclay's hospitalization. During the course of treatment, Dr. Campbell prescribed certain drugs for Barclay, which were known to sometimes produce a condition known as tardive dyskinesia. The evidence is undisputed that Dr. Campbell failed to warn Barclay of the risks associated with the medication, and Barclay now suffers from tardive dyskinesia.

Our decision in this case is governed by the Medical Liability and Insurance Improvement Act, TEX.REV.CIV.STAT.ANN. art. 4590i (Vernon Supp.1984), which was enacted in 1977. This Act changed the common-law rule concerning the physician's duty of disclosure, based on the standards of the "reasonable medical practitioner," as declared in *Wilson v. Scott,* 412 S.W.2d 299, 302 (Tex.1967), and established a panel of experts to determine which risks

related to medical care should be disclosed. Section 6.07(a) of the Act creates a rebuttable presumption of negligence when the physician has failed to disclose one of the risks which the panel has listed among those to be disclosed. Section 6.07(b) provides that if the panel has made no determination concerning the disclosure of the risk attendant to the medical procedure in question, the physician is under the "duty otherwise imposed by law." This "duty otherwise imposed by law" was interpreted in *Peterson v. Shields,* 652 S.W.2d 929 (Tex.1983) as the duty imposed by section 6.02: "to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent."

*Peterson* was a case like the present in which the risk in question was not one of those listed by the panel. The court pointed out that medical testimony was necessary to determine the materiality of the risk because the case was not one of those in which the materiality of the risk had already been determined by the panel. Consequently, the court said that the plaintiff was required to present expert testimony to prove that the condition complained of was a "risk inherent in the medical procedure performed" and also that the expert "should testify as to all other facts concerning the risk which show that knowledge of the risk could influence a reasonable person in making a decision to consent to the procedure." In view of medical testimony in *Peterson* that the operation in question involved a "definite risk" to a certain nerve, the court held that a jury issue was presented covering the doctor's negligence in failing to disclose this risk.

 We do not interpret the opinion in *Peterson* as establishing that a jury question is presented whenever there is expert testimony to the effect that the condition complained of is a risk "inherent" in the procedure in the sense that there is some statistical probability, however small, that

opinion was issued. Issuance date, after his resignation, is due to the inter-court circulation

requirements of this court's local rules.

the procedure may be followed by the condition of which complaint is made. In other contexts an "inherently dangerous" activity is considered to be one accompanied by an unusual or extraordinary risk. *See* 25A C.J.S. *Dangerous* at 468–69 (1966); *Gessell v. Traweek,* 628 S.W.2d 479 (Tex. App.—Texarkana 1982, writ ref'd n.r.e.) (work "inherently dangerous to the public"). Although the term "risk" in article 4590i may not connote quite such an unusual or extraordinary danger, we conclude that the "inherent risk" mentioned in *Peterson* must be more than negligible or theoretical when viewed prospectively at the time the medical procedure is recommended. As we read *Peterson,* expert opinion is required to establish the materiality of the risk if it is not one of those listed by the panel.

■ In the present case we hold that there is no expert testimony that the risk is material in the sense of one that could have influenced a reasonable person in consenting to the treatment. Dr. Campbell testified that appellant, because of his age group, had an extremely low risk for tardive dyskinesia, less than one-half of one percent, which he considered to be a very small risk. Dr. Jankovic, a neurologist, with a special interest in tardive dyskinesia, testified that either of the drugs administered by appellee could cause tardive dyskinesia, yet the risk was small. Dr. Robert Smith testified that he could not say for certain that appellant had tardive dyskinesia, and that it was unusual for dosages as given by appellee to cause tardive dyskinesia in such a short period of time. Dr. Samuel Neely, a psychiatrist, testified that the risk of tardive dyskinesia in a patient of appellant's age from the drugs in question is extremely small.

Moreover, the undisputed evidence here establishes that Barclay did not have the reactions of a reasonable person. All the medical experts, including Dr. Jankovic, who testified for plaintiff, were of the opinion that Barclay was suffering from a condition requiring antipsychotic medication. Dr. Neely testified that it would be poor psychiatric practice to tell a patient like Barclay of the risk of side effects like tardive dyskinesia because it would keep him from taking the drugs. Defendant, Dr. Campbell, also testified that telling Barclay of possible side effects would have made it more difficult for him to take the medication because such disclosure might make him uncooperative. Dr. Jankovic, who also treated plaintiff, prescribed antipsychotic drugs which he admitted were associated with certain side effects, but, according to plaintiff, Dr. Jankovic never warned him about these risks.

■ Thus the undisputed expert testimony shows that the disclosure, which plaintiff alleges Dr. Campbell should have made, was not medically feasible because it would probably have caused him to refuse the treatment, no matter how minimal the risk and how great the countervailing risk of refusing the medication. On this point, the legislative intent is indicated by section 6.07(a)(2), which provides that even in cases where the defendant is presumed to have been negligent in failing to disclose a risk listed by the panel as one requiring disclosure, "failure to disclose may be found not to be negligent if there was an emergency or if for some other reason it was not medically feasible to make a disclosure of the kind that would otherwise have been negligence." If the risk is not one of those listed, and, therefore, falls under subdivision (b) rather than subdivision (a) of section 6.07, the defendant physician should be under no greater duty and the plaintiff should have no lesser burden, than if the risk were one of those listed. Testimony that the risk is "inherent" in the procedure should have no greater effect than to raise the same presumption, which may be rebutted by evidence that it was "not medically feasible" to make the disclosure that otherwise would be required.

■ As section 6.02 expressly provides, "the only theory on which recovery may be obtained is that of *negligence* in failing to disclose the risks and hazards that could have influenced a reasonable person in making a decision to give or withhold con-

sent." (Emphasis added.) We hold that where the undisputed medical evidence establishes that "it was not medically feasible to make a disclosure of the kind that would otherwise have been negligence," any presumption of negligence is rebutted and no issue of fact of the defendant's negligence is raised. It follows that under the undisputed evidence here, any such presumption was rebutted, and thus the trial court was correct in refusing to submit the consent issue to the jury.

The judgment of the trial court is affirmed.