**Terri BLAKESLEY**

v.

**Larry M. WOLFORD, et al.**

**Civ. A. No. 82–5820.**

United States District Court,
E.D. Pennsylvania.

May 1, 1987.

Joseph F. Roda, Lancaster, Pa., for plaintiff.

Donald E. Jose, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

*Background*

This dental malpractice case was tried to a jury in 1984 under Pennsylvania law.

The jury returned a verdict for the plaintiff in the amount of $800,000. On appeal, the Third Circuit held that Pennsylvania and Texas law "reflect and promote fundamentally different principles and interests," and that Texas law should have been applied to this case. *Blakesley v. Wolford,* 789 F.2d 236, 240, 243 (3d Cir.1986). Texas law reflected "that state's policy to limit medical malpractice claims within prescribed bounds in an effort to control health care costs and promote the general accessibility of health care in Texas." *Id.* at 240. The Third Circuit noted differences between Texas and Pennsylvania law with respect to their approaches to informed consent and their compensation policies. The court of appeals reversed the judgment entered in favor of the plaintiff and remanded for a new trial, with directions that Texas law be applied to "all issues."

Plaintiff subsequently filed a motion to recall the mandate and amend the judgment on the ground that the law of Texas was not as the parties and the Third Circuit had believed it to be throughout the prosecution of the appeal. The plaintiff's motion was denied without comment. However, Judge Bissell issued a short concurrence noting his view that "our remand 'for a new trial' should not be construed to preclude the district court from hearing and deciding on a motion *in limine* the very issues raised in the motion which this court denies here."

Plaintiff has now filed a motion *in limine* to reinstate judgment. Plaintiff does not dispute the applicability of Texas law to this case, but argues that, under Texas law, the trial was without error.

For the reasons which follow, I will deny the motion to reinstate judgment.

### The "Changes" in Texas Law

A. *Informed Consent*

The Third Circuit found that Texas law was "markedly different" from Pennsylvania's lay approach to informed consent.[1]

The Third Circuit understood Texas law to focus

> on what the physician believes should be disclosed, not what the patient might wish to know, as in Pennsylvania.
>
> Under Texas law, a Medical Disclosure Panel ... is empowered to determine the specific risks and hazards peculiar to a particular medical procedure which must be disclosed to the patient. [Tex.Rev. Civ.Stat.Ann. art. 4590i], § 6.03 *et seq.* Once the Panel has determined the proper level of disclosure, and it is shown that the physician has met that level of disclosure in a particular case, a rebuttable presumption is established that the operation was conducted with the patient's informed consent. Conversely, if the physician fails to disclose the information mandated by the Panel, a rebuttable presumption that the procedure was performed in the absence of the patient's informed consent is established. *Where the Panel has not established the requisite disclosure for a specific medical procedure, then the level of informed consent required of the doctor is that which a reasonable doctor with defendant's experience would have disclosed to the patient in similar circumstances.* Wilson v. Scott, 412 S.W.2d 299 (Tex.1967).

*Blakesley,* 789 F.2d 236, 239–40 (emphasis added).

Prior to the Third Circuit's opinion, in a decision which counsel failed to bring to the attention of the court, the Texas Supreme Court had effectively overruled the *Wilson* precedent. Section 6.07(b) of the statute provides that where the Panel has not established the requisite disclosure, the doctor is under "the duty otherwise imposed by law." In 1983, the Texas Supreme Court held that the duty imposed by section 6.02 of the statute was not the duty imposed by *Wilson,* but the duty "to disclose all risks of hazards which could influence a reasonable person in making a decision to consent to the procedure." *Peter-*

---

1. Under the lay approach, the physician is required to disclose to the patient all facts, risks and alternatives which the reasonable patient would deem significant in deciding whether to undergo the recommended treatment.

*son v. Shields,* 652 S.W.2d 929, 931 (Tex. 1983).

### B. *Method of Proving Informed Consent*

*Peterson* also made clear that, where the Medical Disclosure Panel has not established the required disclosure, under Texas law "the plaintiff *must* prove, by expert testimony, that the medical condition complained of is a risk inherent in the medical procedure performed. The expert should also testify to all other facts concerning the risk which show that knowledge of the risk could influence a reasonable person in making a decision to consent to the procedure." *Peterson,* 652 S.W.2d 929, 931 (emphasis added).

### C. *Damages*

Subsequent to the Third Circuit's decision, there has been a clarification of Texas law with respect to damages. Section 11.-02 of the statute limits the civil liability of a physician to an amount not to exceed $500,000. Section 11.04 provides that this dollar amount will be adjusted in accordance with changes in the consumer price index.

On July 9, 1986, the Texas Supreme Court applied these statutory provisions and found that as of April, 1983 the statutory cap was equivalent to $804,419. *Baptist Hospital of Southeast Texas, Inc. v. Baber,* 714 S.W.2d 310 (Tex.1986). *Baber* does not change the law of Texas, but makes clear that, given the inflationary forces in operation from April, 1983 until this trial in 1984, the Texas damage cap was more than $814,000.

### *This Court's Authority to Ignore the Mandate*

The mandate issued by the Third Circuit on April 30, 1986 appeared clear:

We hold that the district court erred in its choice of law in this case and, accordingly, we will reverse the judgment en-

tered in favor of Blakesley and against Wolford. We will remand this case to the district court for a new trial, with directions that it apply Texas law rather than Pennsylvania law to all issues. *Blakesley,* 789 F.2d 236, 243.

However, it is equally clear from the Third Circuit's opinion that the court misinterpreted the law of Texas. In its opinion, the court did not consider the possibility that, considered under the actual Texas law, any error in the choice of law was harmless.

■ As a general principle, a lower court must proceed in accordance with the terms of a clear mandate and the law of the case as established on appeal. *Briggs v. Pennsylvania R.R. Co.,* 334 U.S. 304, 306, 68 S.Ct. 1039, 1040, 92 L.Ed. 1403 (1944); *Bankers Trust Co. v. Bethlehem Steel Corp.,* 761 F.2d 943, 949 (3d Cir.1985). However, the Third Circuit has stated in the context of a remand "for further proceedings consistent with this opinion," that "[a] trial court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Bankers Trust,* 761 F.2d 943, 949.

The mandate and the opinion must be considered together in their entirety with particular reference to the issues considered. From the proposition that a trial court must adhere to the decision and mandate of an appellate court there follows the long-settled corollary that *upon remand, it may consider, as a matter of first impression, those issues not expressly or implicitly disposed of by the appellate decision. A trial court is thereby free to make any order or direction in further progress of the case, not inconsistent with the decision of the appellate court, as to any question not settled by the decision.*

*Id.* at 950 (citations omitted) (emphasis added).[2]

---

**2.** Defendants cite *Bankers* in support of the proposition that the trial court may not deviate from the strict limits of the mandate. *Noel v. United Aircraft Corp.,* 359 F.2d 671 (3d Cir.1966) (applying *Briggs*). In *Noel,* there was no

change in facts or law to justify the district court's failure to comply strictly with the mandate. Nor was the district court's action the result of its consideration of a legal issue not presented to the court of appeals. *Noel* thus

■ The Third Circuit never considered the specific issue of whether, in view of *Peterson* and *Baber,* the application of Pennsylvania law to this case was harmless error. The issue was presented to them only in the motion to recall the mandate, denied without opinion and without requesting full briefing. In interpreting the Third Circuit's action, I am without any guidance save for that provided in Judge Bissell's concurring opinion. After careful review of the Third Circuit's earlier opinion in this case, and of Judge Bissell's concurrence, I conclude that the denial of the motion to recall the mandate does not tie my hands in this matter. The silence of the majority may be interpreted as agreement with Judge Bissell as readily as it may be interpreted as disagreement. The basis of the Third Circuit's decision may well have been that the issue presented in the motion to recall the mandate was not an issue before that Court, and was properly a matter of first impression for the trial court. *See American College of Obstetricians & Gynecologists, et al. v. Thornburgh,* 656 F.Supp. 879, 884, n. 8 (E.D.Pa. 1987).

The unusual facts of this case present a matter of first impression. However, I have the benefit of third circuit cases which address the more common situation in which there is a change in state law subsequent to the issuance of the mandate. The principles embodied in those decisions lead me to conclude that I have authority to ignore the otherwise binding mandate of the court of appeals if there has been a clear pronouncement that Texas law is not as the Third Circuit understood it to be.

The leading case is *Lennig v. New York Life Insurance Co.,* 130 F.2d 580 (3d Cir. 1942). After the Third Circuit had remanded for a new trial, the district court entered judgment n.o.v. for the defendant in the belief that a decision by the Pennsylvania Supreme Court had "interpreted the law of Pennsylvania differently than [the Third

Circuit] had perceived it to be." *Id.* at 581.[3] The Third Circuit stated that, had the district court been correct in its belief that the two interpretations of state law were inconsistent,

> then the court below [would have been] quite right in applying to the retrial of this case the rule if and as made plain subsequently by binding state court decision. This is necessarily so. The duty resting upon a federal court, in appropriate circumstances, is to ascertain and apply local law and not to make it. But where a federal court of appeals in a given case has ascertained and applied what it apprehends to be the pertinent state law, such ascertainment of the local law is binding upon the trial court at the retrial of the case unless it is clearly made to appear by subsequent statute, no more than declaratory, or by binding state court decision that the law of the state was other than what the federal court had understood it to be.

*Id.* at 581.

This principle was reaffirmed in *Ratay v. Lincoln National Life Insurance Co.,* 405 F.2d 286 (3d Cir.1968). In *Ratay,* the court of appeals had held that the district court had committed a fundamental error in charging the jury on the degree of proof required. The Third Circuit had denied a petition for rehearing, and the Supreme Court had denied *certiorari.* The district court found that, after the denial of the petition for rehearing, the Pennsylvania Supreme Court had ruled that the burden of proof was the same as had been stated in the district court's original charge.

On appeal, the Third Circuit reiterated the principle of *Lennig,* but held that the district court had misinterpreted the holding of the Pennsylvania Supreme Court. The Third Circuit found that the state Supreme Court had actually reaffirmed the rule which had been applied on appeal. In

---

applied the general rule of *Briggs,* and not the exception to that rule. *See Ratay v. Lincoln National Life Insurance Co.,* 405 F.2d 286, 288 (3d Cir.1968).

**3.** Like the present case, *Lennig* concerned the interpretation of existing state law, making it clear that a change in state law is not necessary before the district court may ignore the mandate for a new trial.

its opinion, the Court of Appeals stated that the *Lennig* exception

> must be confined within its appropriate limits. It is only where there has been clear-cut change in the state law after the federal appellate decision, which clearly compels a different conclusion, that a federal trial court may disregard the mandate it has received ... The appellate decision ordinarily marks the end of a stage of the dispute by deciding the law of the case and does not serve as a threshold for fresh contention on the law. A later state court decision which merely applies settled principles to new factual circumstances and is not a declaration of new and overruling legal principles may not be exploited as a springboard for repetition of the argument which had been unsuccessfully made on appeal ... [S]o long as [the state court decision] does not amount to a clear pronouncement that the state law rule is different from what had been declared by the federal appellate court, the district court must carry out the mandate.

*Ratay*, 405 F.2d at 288.

Clearly, these cases did not anticipate that the controlling state court decision would be overlooked by the parties and never presented to the Court of Appeals. The principle underlying both decisions is that "the duty rests upon federal courts to apply state law ... in accordance with the then controlling decision of the highest state court." *Ratay* at 288, quoting *Vandenbark v. Owens-Illinois Glass Co.*, 311 U.S. 538, 543, 61 S.Ct. 347, 350, 85 L.Ed. 327 (1941). This court must apply Texas law as it now exists, regardless of whether that law has existed for six months or six years. Therefore, I conclude that, as a procedural matter, I have authority to ignore the mandate for a new trial where the Third Circuit was not aware of then existing Texas case law.[4]

■ However, as a substantive matter I conclude that a new trial is required in this case. The mandate of the Third Circuit

should be ignored only in an extreme case. In the case before me, the primary perceived distinction between Texas and Pennsylvania law was, indeed, illusory. Where, as here, the Medical Disclosure Panel had not, as of the time of the medical procedure, evaluated and published its determination of the type of disclosure required, the reasonable patient standard is to be applied. However, the Third Circuit's mandate required the application of Texas law to *all issues* in the case; the mandate was not limited to those issues which had been preserved for appeal during the first trial. There remain significant differences between Pennsylvania and Texas law.

Under Texas law, the plaintiff must prove through expert testimony that the medical condition complained of is a risk inherent in the medical procedure performed, and the defendant is entitled to demand that the jury be so charged.

I also find a significant difference in the law regarding the feasibility exception. Pennsylvania allows an exception only in an emergency; Texas permits an exception whenever it would not be feasible to obtain signed consent. Defendants contend that it was not feasible to terminate the operation in order to obtain the plaintiff's consent. The question of feasibility is an issue for the jury.

With regard to damages, Texas law expressly requires that the jury be instructed, in specific language, not to consider, discuss, nor speculate whether or not liability, if any, on the part of any party is or is not subject to any limit under applicable law. Tex.Rev.Civ.Stat.Ann. art. 4590i, § 11.-02(d). Regardless of whether I believe that the jury entered into any speculation regarding a cap on damages, defendant is clearly entitled to this instruction under Texas law.

Plaintiff has argued that a recent decision by the Fifth Circuit bars defendant from raising the statutory cap as a defense at this stage in the proceedings. *Ingraham v. United States*, 808 F.2d 1075 (5th Cir.1987). I note that both *Ingraham*

---

4. Defendant has argued that, as a procedural matter, there is no "judgment" to be reinstated. The fallacy of this argument is illustrated by the very cases discussed, *supra,* which create exceptions to the general requirement that the district court abide by a mandate for a new trial.

and *Lucas v. United States,* 807 F.2d 414 (5th Cir.1986) emphasize that where there is no unfair surprise to the plaintiff, technical compliance with Fed.R.Civ.P. 8(c) is not required. I find no prejudicial surprise in this case.

Finally, and most importantly, the *Baber* decision did not alter Texas law, and was not inconsistent with anything contained in the Third Circuit's decision. Moreover, the Third Circuit was aware of the question of the constitutionality of the cap on damages, and nevertheless required a new trial on all issues. *Blakesley,* 789 F.2d 236, 240 n. 7.[5] The principles of *Ratay* and *Lennig* do not extend to such a case.

### Conclusion

Although I believe that, in the appropriate case, the district court may ignore a clear mandate for a new trial where it is absolutely clear that the appellate court misapprehended the then existing state law, I find that the district court may do so only in a case where it is absolutely clear that a new trial would serve no purpose. I do not believe that this is such a case. I will, therefore, deny the motion to reinstate judgment.

An appropriate order is attached.

### ORDER

Upon consideration of plaintiff's motion *in limine* to reinstate judgment, defendants' response, plaintiff's reply, the memoranda and supplemental memoranda submitted by the parties, and the comments of counsel at the conference in chambers on March 23, 1987, and for the reasons stated in the attached memorandum, IT IS ORDERED that the plaintiff's motion *in limine* to reinstate judgment is DENIED.

IT IS SO ORDERED.

---

**5.** I am not persuaded that the cap does not violate the federal constitution, or that the Texas Supreme Court will hold that the cap violates the state constitution. I note that the Fifth Circuit has certified the latter question to the state Supreme Court. *Lucas v. United States,* 807 F.2d 414, 418 (5th Cir.1986). Because the jury may not return a verdict in excess of the statutory cap, I find that it is premature to rule upon this question.