Opinion issued October 9, 2003







            












In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-03-00105-CV
____________
 
OSWALD LOOKSHIN AND PAMELA LOOKSHIN, Appellants
 
V.
 
BERNARD FELDMAN, M.D., Appellee
 

 
 
On Appeal from the 157th Judicial District Court
Harris County, Texas
Trial Court Cause No. 2002-07665




O P I N I O N

          Appellants, Oswald and Pamela Lookshin, challenge the trial court’s order
dismissing their medical malpractice lawsuit against appellee, Dr. Bernard H.
Feldman, because of their failure to provide an expert report, as required by the
former Texas Medical Liability and Insurance Improvement Act (the Act).


 In their
sole issue, appellants contend that, because their action was based solely on Dr.
Feldman’s alleged failure to disclose the risks and hazards involved in a surgical
procedure, they were not required to file an expert report pursuant to subsection
13.01(d) of the Act.



          We affirm and award Dr. Feldman his appellate attorneys’ fees as just damages.Facts and Procedural Background
          In December 1999, Dr. Feldman performed a transurethral resection of Oswald
Lookshin’s prostrate. In their original petition, appellants alleged that Dr. Feldman
was negligent in failing to properly (1) inform Mr. Lookshin of the “possible adverse
consequences” of the surgery, (2) perform the surgery, and (3) treat Lookshin
following the surgery. As a result of Dr. Feldman’s alleged acts and omissions, Mr.
Lookshin asserted that he subsequently experienced pain when passing urine and was
unable to engage in sexual activity with his wife. Appellants sought recovery of
compensatory and exemplary damages totaling more than $2 million. Dr. Feldman
answered the lawsuit and generally denied appellants’ claims.
          Dr. Feldman subsequently filed a motion to dismiss appellants’ lawsuit because
of their failure to file an expert report by the 180th day after they filed suit, as
required by subsection 13.01(d). Appellants then filed an amended petition, alleging
only a single cause of action against Dr. Feldman for his failure to personally disclose
the risks and hazards of the surgery to Mr. Lookshin. Appellants also filed a response
to Dr. Feldman’s motion, arguing that, because they were no longer alleging that Dr.
Feldman negligently operated on or treated Looksin, and because Dr. Feldman did not
personally inform Lookshin of the possible risks and side effects of the surgery,
appellants were not required to file an expert report.
          Following a hearing,


 the trial court granted Dr. Feldman’s motion and
dismissed appellants’ claims, in their entirety, with prejudice.
Expert Report
          In their sole issue, appellants argue that the trial court erred in dismissing their
claims because an expert report is not required in a medical malpractice case based
solely on a cause of action for a physician’s alleged failure to disclose the risks and
hazards of a surgical procedure.
Standard of Review
          We review a trial court’s dismissal of a healthcare liability claim under section
13.01 of the Act using an abuse of discretion standard. Powers v. Mem’l Hermann
Hosp. Sys., 81 S.W.3d 463, 465 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). 
A trial court abuses its discretion if it acts arbitrarily or unreasonably or without
reference to guiding rules or principles. Id.
Expert Report Requirement
          In his motion to dismiss appellants’ claims, Dr. Feldman relied chiefly on
subsection 13.01(d) of the Act, which read, in relevant part, as follows:
Not later than the later of the 180th day after the date on which a health
care liability claim is filed . . . the claimant shall, for each physician or
health care provider against whom a claim is asserted:
 
(1)furnish to counsel for each physician or health care provider one
or more expert reports, with a curriculum vitae of each expert
listed in the report; or
 
(2)voluntarily nonsuit the action against the physician or health care
provider.




As penalties for a claimant’s non-compliance with this subsection, subsection
13.01(e) of the Act provided as follows:
If a claimant has failed to, for any defendant physician or healthcare
provider, to comply with Subsection (d) of this section within the time
required, the court shall, on the motion of the affected physician or
health care provider, enter an order awarding as sanctions against the
claimant or the claimant’s attorney:
 
(1)the reasonable attorney’s fees and costs of court incurred by that
defendant;
 
(2)the forfeiture of any cost bond respecting the claimant’s claim
against that defendant to the extent necessary to pay the award;
and
 
(3)the dismissal of the action of the claimant against that defendant
with prejudice to the claim’s refiling.




It is undisputed that appellants filed no expert report within 180 days of filing their
lawsuit. Thus, their claims were subject to dismissal with prejudice.
          Appellants direct our attention to subsection 13.01(j) of the Act, which
provided that the filing of an expert report was not required “regarding any issue
other than an issue relating to liability or causation.”


 They argue that, in an action
based on a physician’s failure to disclose the risks and hazards of a surgical
procedure, “the appropriate standard of care, as a matter of law, has already been
predetermined by the Texas Medical Disclosure Panel” (the Panel),


 and thus, “no
expert’s report is required of a plaintiff pursuing such a case.” In support of their
argument, they quote obiter dictum from the Texas Supreme Court that the Panel
“will eliminate the need for expert testimony regarding the materiality of the risk in
most cases.” Peterson v. Shields, 652 S.W.2d 929, 931 (Tex. 1983).


 They note that,
in a failure to disclose suit, “the only theory on which recovery may be obtained is
that of negligence in failing to disclose the risks or hazards that could have influenced
a reasonable person in making a decision to give or withhold consent.”


 Appellants
also note that “[b]efore a patient . . . gives consent to any medical care or surgical
procedure . . . the physician or health care provider shall disclose to the patient . . . the
risks and hazards involved in that kind of care or procedure.”


 Finally, appellants
direct our attention to subsection 6.07(a)(2) of the Act, which provided that, in such
a case, the
failure to disclose the risks and hazards involved in any medical care or
surgical procedure required to be disclosed . . . shall be admissible in
evidence and shall create a rebuttable presumption of a negligent failure
to conform to the duty of disclosure . . . and this presumption shall be
included in the charge to the jury . . . .




          Appellants argue that, because Dr. Feldman did not personally provide a
written disclosure to them, listing the risks and hazards of the surgical procedure, as
identified by the Panel, they would have been entitled to the rebuttable presumption
of subsection 6.07(a)(2) “without the necessity of any expert testimony.” Appellants
conclude that the requirement of an expert report under these circumstances would
result in “the complete destruction and vaporization” of the work of the Panel and the
“defacto destruction of all of the informed consent provisions of [the Act].”
          Appellants’ arguments are without merit. First, appellants do not contend that
no disclosures of the risks or hazards of the procedure were made to them before the
surgery. Rather, they assert only that Dr. Feldman did not personally make such
disclosures. In an affidavit filed with the trial court, Mr. Lookshin states that, on the
morning of his surgery, “I did not have any conversations with Dr. Feldman. He was
no where [sic] around when I hurriedly filled out and signed the many pages of
paperwork required for me to be admitted into the hospital as a patient.” Dr. Feldman
does not concede that no disclosures were made to appellants before the surgery at
issue. In their briefing to this Court, appellants acknowledge that “a written
disclosure document” was presented to Mr. Lookshin by an employee of the hospital
where Dr. Feldman performed the surgery.


 Section 6.05 of the Act did not require
a physician to personally present such disclosures to a patient, and section 6.06
specifically provided that consent to medical care “shall be considered effective” if
given in writing and signed by the patient.


 Thus, contrary to appellants’ assertions,
the record presented here does not support a conclusion that a rebuttable presumption
of negligence arose in this case.
          Second, the Texas Supreme Court has held that an action alleging a physician’s
failure to fully inform a patient of the risks of surgery is a negligence claim governed
by the procedural requirements of the Act. McKinley v. Stripling, 763 S.W.2d 407,
409-10 (Tex. 1989). It is evident that expert testimony is necessary, even in a failure
to disclose action, because, as the Texas Supreme Court has explained, proximate
cause remains an issue that must be proven by a plaintiff:
Traditional notions of liability in negligence actions require a finding of
a duty, a breach of that duty, the breach was the proximate cause of
injuries, and that damages occurred. . . . A medical procedure informed
consent case does not differ merely because a statute imposes the duty
of disclosure. An issue of proximate causation must be submitted as in
ordinary negligence cases so the jury may determine whether any breach
of duty caused the injuries suffered. To hold otherwise would amount
to an imposition of strict liability wherein a failure to warn and an
undesirable surgical result would automatically create liability on the
doctor.

Id. at 409; see also Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d
873, 876 (Tex. 2001) (“Texas courts have long recognized the necessity of expert
testimony in medical-malpractice cases.”). Because claimants are generally required
to present expert testimony to prevail in a medical malpractice claim, it is not
unreasonable to compel claimants to comply with the procedural requirements of the
Act by timely providing an expert report. See Gill v. Russo, 39 S.W.3d 717, 719
(Tex. App.—Houston [1st Dist.] 2001, pet. denied).
          Finally, the term “healthcare liability claim” was defined by the Act as “a cause
of action against a health care provider or physician for treatment, lack of treatment,
or other claimed departure from accepted standards of medical care or health care or
safety which proximately results in injury to or death of the patient, whether the
patient’s claim or cause of action sounds in tort or contract.”


 Appellant’s action
against Dr. Feldman falls within this definition, and appellants were, quite simply,
required to comply with subsection 13.01(d). Because causation was an issue to be
determined in appellants’ cause of action, subsection 13.01(j) did not relieve them of
timely filing the required expert report.
          We hold that appellants’ failure to file an expert report within 180 days of
filing their lawsuit left the trial court with no discretion but to dismiss their suit with
prejudice.


 See Palacios, 46 S.W.3d at 880. Accordingly, we further hold that the
trial court did not abuse its discretion in dismissing appellants’ lawsuit.
          We overrule appellants’ sole issue.
Motion for Sanctions
          Dr. Feldman has filed a motion for sanctions against appellants for filing a
frivolous appeal, and he seeks recovery of attorneys’ fees totaling $4,400 incurred in
the preparation of the briefing filed on his behalf in this appeal. In his motion, Dr.
Feldman argues that, in refusing to file an expert report, appellants have ignored the
clear procedural requirements of the Act, “have made no arguments that the existing
law should be changed, and have only given a distorted recitation of the law as it
applies to health care liability claims.”


 We agree.
          Under Rule 45, we may award a prevailing party just damages if we objectively
determine that an appeal is frivolous after considering the record, briefs, or other
papers filed in this Court. Tex. R. App. P. 45; Smith v. Brown, 51 S.W.3d 376, 381
(Tex. App.—Houston [1st Dist.] 2001, pet. denied). A finding that a party filed its
appeal in bad faith is neither dispositive nor material to deciding whether an appeal
is objectively frivolous and sanctionable pursuant to Rule 45. Smith, 51 S.W.3d at
381. The presence of bad faith may be relevant, however, to determine the amount
of the sanction. Id.
          In applying Rule 45, we exercise prudence and caution and use careful
deliberation. See Bradt v. West, 892 S.W.2d 56,78 (Tex. App.—Houston [1st Dist.]
1994, writ denied). Additionally, to objectively determine whether an appeal is
frivolous, we look at the record from the viewpoint of the advocate and decide
whether he had reasonable grounds to believe the case could be reversed. See id.
          In response to Dr. Feldman’s motion for sanctions, appellants, in their reply
brief, assert that Mr. Lookshin’s injury is not frivolous, and they restate their
argument that section 6.07 creates a rebuttable presumption “without the necessity of
any expert testimony.” After being given a second opportunity to respond to the
motion, appellants again restate their “rebuttable presumption” argument. 
Additionally, they contend that Dr. Feldman “completely failed to follow Texas law
with respect to providing informed consent,” trial judges “are reversed on a regular
basis,” and Mr. Lookshin’s injury is not “frivolous.”
          Appellants conclude their second response with a political attack on the
medical profession in Texas. They assert that “The relief sought by [Dr. Feldman]
and his counsel is part of a concerted effort by the Texas Medical Association, the
Texas Medical Liability Trust, and other entities to intimidate and harass deserving
parties such as the Appellants.” From this, appellants conclude that their appeal “is
most certainly not frivolous.”
           Such a vitriolic political attack has no place in a Texas court. As we have
stated before, “‘The right to appeal is a most sacred and valuable one . . . .’” Bradt,
892 S.W.2d at 78 (citations omitted). However,
[w]e will not permit spurious appeals, which unnecessarily burden
parties and our already crowded docket, to go unpunished. Such appeals
take the court’s attention from appeals filed in good faith, wasting court
time that could and should be devoted to those appeals. No litigant has
the right to put a party to needless burden and expense or to waste a
court’s time that would otherwise be spent on the sacred task of
adjudicating the valid disputes of Texas citizens.

Id. at 79 (citations omitted).
          Here, appellants have argued that, in a case in which a physician is required to
obtain informed consent from a patient, but fails to personally inform a patient of the
risks and hazards involved in a surgical procedure, it is unnecessary to present expert
testimony concerning whether the physician deviated from the accepted standard of
care. Although written disclosures were made to appellants in writing by a hospital
employee, they do not acknowledge that the Act specifically provided that such
consent is effective if signed by the patient, and that a physician is considered to have
complied with the informed consent requirements of the statute if consent is obtained
in this manner.


 More importantly, expert testimony was still necessary in
appellants’ failure to disclose action because causation remained an element to be
proven. The procedural requirements of the Act apply to all “healthcare liability
claims,” and subsection 13.01(j) did not relieve appellants from timely filing the
required expert report.
          Accordingly, we can only conclude that appellants’ attorney had no reasonable
grounds to believe that the trial court’s order of dismissal would be reversed. See
Smith, 51 S.W.3d at 380. Moreover, this Court will not allow the appeals process to
be used by a litigant to make ad hominem attacks on an opposing party and subject
that party to “needless burden and expense.” See Bradt, 892 S.W.2d at 79. After
reviewing the record and the arguments presented by the parties to the trial court and
in their briefs to this Court, we hold that appellants’ appeal is objectively frivolous
and that Dr. Feldman is entitled to the recovery of “just damages” in the amount of
$4,400, his reasonable appellate attorneys’ fees as indicated by the affidavit filed by
his counsel.Conclusion
          We affirm the order of the trial court. We further order that counsel for
appellants, William V. Wade, individually, pay Dr. Feldman $4,400 in attorneys’ fees
as a sanction for filing a frivolous appeal. Tex. R. App. P. 45.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Chief Justice Radack and Justices Taft and Jennings.