Oswald **LOOKSHIN** and Pamela **Lookshin, Appellants,**

v.

Bernard **FELDMAN, M.D., Appellee.**

No. 01–03–00105–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 9, 2003.

Rehearing Overruled Nov. 21, 2003.

William V. Wade, William V. Wade & Associates, Houston, TX, for Appellants.

Matthew B.E. Hughes, Boston & Hughes, James T. Sunosky, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices TAFT and JENNINGS.

## OPINION

TERRY JENNINGS, Justice.

Appellants, Oswald and Pamela Lookshin, challenge the trial court's order dismissing their medical malpractice lawsuit against appellee, Dr. Bernard H. Feldman, because of their failure to provide an expert report, as required by the former Texas Medical Liability and Insurance Improvement Act (the Act).[1] In their sole issue, appellants contend that, because their action was based solely on Dr. Feldman's alleged failure to disclose the risks and hazards involved in a surgical procedure, they were not required to file an expert report pursuant to subsection 13.01(d) of the Act.[2]

We affirm and award Dr. Feldman his appellate attorneys' fees as just damages.

## Facts and Procedural Background

In December 1999, Dr. Feldman performed a transurethral resection of Oswald Lookshin's prostrate. In their original petition, appellants alleged that Dr. Feldman was negligent in failing to properly (1) inform Mr. Lookshin of the "possible adverse consequences" of the surgery, (2) perform the surgery, and (3) treat Lookshin following the surgery. As a result of Dr. Feldman's alleged acts and omissions, Mr. Lookshin asserted that he subsequently experienced pain when passing urine and was unable to engage in sexual activity with his wife. Appellants sought recovery of compensatory and exemplary damages totaling more than $2 million. Dr. Feldman answered the lawsuit and generally denied appellants' claims.

Dr. Feldman subsequently filed a motion to dismiss appellants' lawsuit because of their failure to file an expert report by the 180th day after they filed suit, as required by subsection 13.01(d). Appellants then filed an amended petition, alleging only a single cause of action against Dr. Feldman for his failure to personally disclose the risks and hazards of the surgery to Mr. Lookshin. Appellants also filed a response to Dr. Feldman's motion, arguing that, because they were no longer alleging that Dr. Feldman negligently operated on or treated Lookshin, and because Dr. Feldman did not personally inform Lookshin of the possible risks and side effects of the surgery, appellants were not required to file an expert report.

Following a hearing,[3] the trial court granted Dr. Feldman's motion and dis-

---

1. Act effective August 29, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039, (formerly codified at Tex Rev.Civ. Stat. Ann. art. 4590i, §§ 1.01–16.02), *repealed by,* Act effective September 1, 2003, 78th Leg., R.S. ch. 204, § 10.09, 2003 Tex. Gen. Laws 864, 884. Many of the provisions of former article 4590i are to be codified at Tex. Civ. Prac. & Rem.Code Ann. §§ 74.001–74.507.

2. *Id.* § 13.01(d).

3. The record does not contain a reporter's record of the hearing.

missed appellants' claims, in their entirety, with prejudice.

### Expert Report

In their sole issue, appellants argue that the trial court erred in dismissing their claims because an expert report is not required in a medical malpractice case based solely on a cause of action for a physician's alleged failure to disclose the risks and hazards of a surgical procedure.

### *Standard of Review*

We review a trial court's dismissal of a healthcare liability claim under section 13.01 of the Act using an abuse of discretion standard. *Powers v. Mem'l Hermann Hosp. Sys.*, 81 S.W.3d 463, 465 (Tex.App.-Houston [1st Dist.] 2002, pet. denied). A trial court abuses its discretion if it acts arbitrarily or unreasonably or without reference to guiding rules or principles. *Id.*

### *Expert Report Requirement*

In his motion to dismiss appellants' claims, Dr. Feldman relied chiefly on subsection 13.01(d) of the Act, which read, in relevant part, as follows:

Not later than the later of the 180th day after the date on which a health care liability claim is filed ... *the claimant shall,* for each physician or health care provider against whom a claim is asserted:

(1) furnish to counsel for each physician or health care provider one or more expert reports, with a curriculum vitae of each expert listed in the report; or

(2) voluntarily nonsuit the action against the physician or health care provider.[4]

As penalties for a claimant's non-compliance with this subsection, subsection 13.01(e) of the Act provided as follows:

If a claimant has failed to, for any defendant physician or healthcare provider, to comply with Subsection (d) of this section within the time required, the court shall, on the motion of the affected physician or health care provider, enter an order awarding as sanctions against the claimant or the claimant's attorney:

(1) the reasonable attorney's fees and costs of court incurred by that defendant;

(2) the forfeiture of any cost bond respecting the claimant's claim against that defendant to the extent necessary to pay the award; and

(3) the dismissal of the action of the claimant against that defendant with prejudice to the claim's refiling.[5]

It is undisputed that appellants filed no expert report within 180 days of filing their lawsuit. Thus, their claims were subject to dismissal with prejudice.

Appellants direct our attention to subsection 13.01(j) of the Act, which provided that the filing of an expert report was not required "regarding any issue other than an issue relating to liability or causation."[6] They argue that, in an action based on a physician's failure to disclose the risks and hazards of a surgical procedure, "the appropriate standard of care, as a matter of law, has already been predetermined by the Texas Medical Disclosure Panel" (the Panel),[7] and thus, "no expert's report is required of a plaintiff pursuing such a case." In support of their argument, they

---

4.  *Id.* (emphasis added).

5.  *Id.* § 13.01(e).

6.  *Id.* § 13.01(j).

7.  *Id.* § 6.03(a).

quote obiter dictum from the Texas Supreme Court that the Panel "will eliminate the need for expert testimony regarding the materiality of the risk in most cases." *Peterson v. Shields,* 652 S.W.2d 929, 931 (Tex.1983).[8] They note that, in a failure to disclose suit, "the only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent."[9] Appellants also note that "[b]efore a patient ... gives consent to any medical care or surgical procedure ... the physician or health care provider shall disclose to the patient ... the risks and hazards involved in that kind of care or procedure."[10] Finally, appellants direct our attention to subsection 6.07(a)(2) of the Act, which provided that, in such a case, the

> failure to disclose the risks and hazards involved in any medical care or surgical procedure required to be disclosed ... shall be admissible in evidence and shall create a rebuttable presumption of a negligent failure to conform to the duty of disclosure ... and this presumption shall be included in the charge to the jury.... [11]

Appellants argue that, because Dr. Feldman did not personally provide a written disclosure to them, listing the risks and hazards of the surgical procedure, as identified by the Panel, they would have been entitled to the rebuttable presumption of subsection 6.07(a)(2) "without the necessity of any expert testimony." Appellants con-clude that the requirement of an expert report under these circumstances would result in "the complete destruction and vaporization" of the work of the Panel and the "defacto destruction of all of the informed consent provisions of [the Act]."

Appellants' arguments are without merit. First, appellants do not contend that no disclosures of the risks or hazards of the procedure were made to them before the surgery. Rather, they assert only that Dr. Feldman did not *personally* make such disclosures. In an affidavit filed with the trial court, Mr. Lookshin states that, on the morning of his surgery, "I did not have any conversations with Dr. Feldman. He was no where [sic] around when I hurriedly filled out and signed the many pages of paperwork required for me to be admitted into the hospital as a patient." Dr. Feldman does not concede that no disclosures were made to appellants before the surgery at issue. In their briefing to this Court, appellants acknowledge that "a written disclosure document" was presented to Mr. Lookshin by an employee of the hospital where Dr. Feldman performed the surgery.[12] Section 6.05 of the Act did not require a physician to personally present such disclosures to a patient, and section 6.06 specifically provided that consent to medical care "shall be considered effective" if given in writing and signed by the patient.[13] Thus, contrary to appellants' assertions, the record presented here does not support a conclusion that a rebuttable presumption of negligence arose in this case.

---

8. In *Peterson,* the court held that the common law "locality rule" did not apply to a plaintiff's cause of action because section 6.02 of the Act replaced the rule with a "reasonable person" rule. 652 S.W.2d at 930–31.

9. *See* the Act, § 6.02.

10. *Id.* § 6.05.

11. *Id.* § 6.07(a)(2).

12. We note that Mr. Lookshin's medical records are not in the record before us; thus, we cannot determine the extent of the written disclosures provided to or signed by him.

13. *Id.* §§ 6.05, 6.06.

■ Second, the Texas Supreme Court has held that an action alleging a physician's failure to fully inform a patient of the risks of surgery is a negligence claim governed by the procedural requirements of the Act. *McKinley v. Stripling*, 763 S.W.2d 407, 409–10 (Tex.1989). It is evident that expert testimony is necessary, even in a failure to disclose action, because, as the Texas Supreme Court has explained, proximate cause remains an issue that must be proven by a plaintiff:

> Traditional notions of liability in negligence actions require a finding of a duty, a breach of that duty, the breach was the proximate cause of injuries, and that damages occurred.... A medical procedure informed consent case does not differ merely because a statute imposes the duty of disclosure. An issue of proximate causation must be submitted as in ordinary negligence cases so the jury may determine whether any breach of duty caused the injuries suffered. To hold otherwise would amount to an imposition of strict liability wherein a failure to warn and an undesirable surgical result would automatically create liability on the doctor.

*Id.* at 409; *see also Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 876 (Tex.2001) ("Texas courts have long recognized the necessity of expert testimony in medical-malpractice cases."). Because claimants are generally required to present expert testimony to prevail in a medical malpractice claim, it is not unreasonable to compel claimants to comply with the procedural requirements of the Act by timely providing an expert report. *See Gill v. Russo*, 39 S.W.3d 717, 719 (Tex.App.-Houston [1st Dist.] 2001, pet. denied).

14. *Id.* § 1.03(a)(4).

15. *Id.* § 13.01(e).

■ Finally, the term "healthcare liability claim" was defined by the Act as "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract." [14] Appellant's action against Dr. Feldman falls within this definition, and appellants were, quite simply, required to comply with subsection 13.01(d). Because causation was an issue to be determined in appellants' cause of action, subsection 13.01(j) did not relieve them of timely filing the required expert report.

We hold that appellants' failure to file an expert report within 180 days of filing their lawsuit left the trial court with no discretion but to dismiss their suit with prejudice.[15] *See Palacios*, 46 S.W.3d at 880. Accordingly, we further hold that the trial court did not abuse its discretion in dismissing appellants' lawsuit.

We overrule appellants' sole issue.

### Motion for Sanctions

■ Dr. Feldman has filed a motion for sanctions against appellants for filing a frivolous appeal, and he seeks recovery of attorneys' fees totaling $4,400 incurred in the preparation of the briefing filed on his behalf in this appeal. In his motion, Dr. Feldman argues that, in refusing to file an expert report, appellants have ignored the clear procedural requirements of the Act, "have made no arguments that the existing law should be changed, and have only given a distorted recitation of the law as it applies to health care liability claims." [16] We agree.

16. Although a trial court is permitted to award attorneys' fees as sanctions on a party for failing to comply with the procedural re-

Under Rule 45, we may award a prevailing party just damages if we objectively determine that an appeal is frivolous after considering the record, briefs, or other papers filed in this Court. TEX.R.APP. P. 45; *Smith v. Brown,* 51 S.W.3d 376, 381 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). A finding that a party filed its appeal in bad faith is neither dispositive nor material to deciding whether an appeal is objectively frivolous and sanctionable pursuant to Rule 45. *Smith,* 51 S.W.3d at 381. The presence of bad faith may be relevant, however, to determine the amount of the sanction. *Id.*

In applying Rule 45, we exercise prudence and caution and use careful deliberation. *See Bradt v. West,* 892 S.W.2d 56, 78 (Tex.App.-Houston [1st Dist.] 1994, writ denied). Additionally, to objectively determine whether an appeal is frivolous, we look at the record from the viewpoint of the advocate and decide whether he had reasonable grounds to believe the case could be reversed. *See id.*

In response to Dr. Feldman's motion for sanctions, appellants, in their reply brief, assert that Mr. Lookshin's injury is not frivolous, and they restate their argument that section 6.07 creates a rebuttable presumption "without the necessity of any expert testimony." After being given a second opportunity to respond to the motion, appellants again restate their "rebuttable presumption" argument. Additionally, they contend that Dr. Feldman "completely failed to follow Texas law with respect to providing informed consent," trial judges "are reversed on a regular basis," and Mr. Lookshin's injury is not "frivolous."

Appellants conclude their second response with a political attack on the medical profession in Texas. They assert that "The relief sought by [Dr. Feldman] and his counsel is part of a concerted effort by the Texas Medical Association, the Texas Medical Liability Trust, and other entities to intimidate and harass deserving parties such as the Appellants." From this, appellants conclude that their appeal "is most certainly not frivolous."

Such a vitriolic political attack has no place in a Texas court. As we have stated before, " 'The right to appeal is a most sacred and valuable one. . . .' " *Bradt,* 892 S.W.2d at 78 (citations omitted). However,

> [w]e will not permit spurious appeals, which unnecessarily burden parties and our already crowded docket, to go unpunished. Such appeals take the court's attention from appeals filed in good faith, wasting court time that could and should be devoted to those appeals. No litigant has the right to put a party to needless burden and expense or to waste a court's time that would otherwise be spent on the sacred task of adjudicating the valid disputes of Texas citizens.

*Id.* at 79 (citations omitted).

Here, appellants have argued that, in a case in which a physician is required to obtain informed consent from a patient, but fails to personally inform a patient of the risks and hazards involved in a surgical procedure, it is unnecessary to present expert testimony concerning whether the physician deviated from the accepted standard of care. Although written disclosures were made to appellants in writing by a hospital employee, they do not acknowledge that the Act specifically provided that

quirements of 13.01(d), it appears from the record that the trial court was not requested

to and did not do so here. *See id.*

such consent is effective if signed by the patient, and that a physician is considered to have complied with the informed consent requirements of the statute if consent is obtained in this manner.[17]  More importantly, expert testimony was still necessary in appellants' failure to disclose action because causation remained an element to be proven.  The procedural requirements of the Act apply to all "healthcare liability claims," and subsection 13.01(j) did not relieve appellants from timely filing the required expert report.

██ Accordingly, we can only conclude that appellants' attorney had no reasonable grounds to believe that the trial court's order of dismissal would be reversed.  *See Smith,* 51 S.W.3d at 380. Moreover, this Court will not allow the appeals process to be used by a litigant to make ad hominem attacks on an opposing party and subject that party to "needless burden and expense." *See Bradt,* 892 S.W.2d at 79.  After reviewing the record and the arguments presented by the parties to the trial court and in their briefs to this Court, we hold that appellants' appeal is objectively frivolous and that Dr. Feldman is entitled to the recovery of "just damages" in the amount of $4,400, his reasonable appellate attorneys' fees as indicated by the affidavit filed by his counsel.

### Conclusion

We affirm the order of the trial court. We further order that counsel for appellants, William V. Wade, individually, pay Dr. Feldman $4,400 in attorneys' fees as a sanction for filing a frivolous appeal. TEX. R.APP. P. 45.

**17.** *Id.* at §§ 6.05, 6.06.