**Michael GLEASON, Appellant,**

**v.**

**Johnny ISBELL, as Mayor of the City of Pasadena ("City"), Texas, and Individually; Foy Lee Clark, as City Attorney and Individually; Andy Helms, as Director of Finance and Purchasing and Chief of Staff of the City and Individually; Dan Weathers, as Municipal Judge and Individually; John**

---

S. Schneider, Jr., as Assistant City Attorney and Individually; J. Michael Coman, as Assistant City Attorney and Individually; Gene L. Locke, as Attorney for Gene "Iggy" Garison, Johnny Isbell, Lynne Summers, and City Council, and Individually; Lynne Summers, as City Secretary and Individually; the City; Thad Ginn, as Health Department Director of the City and Individually; Jeff Gabbert, as Building Official of the City and Individually; E.C. Summers, as Maintenance Director of the City and Individually; Tommy Shane, as Chief of Police of the City and Individually; Gene "Iggy" Garison, as Councilman for City Council District "D" and Individually; Bruce K. Walters, as City Councilman and Individually; Rusty Campbell, as Health and Building Inspector for the City and Individually; Gary E. Worstell, as President of Pasadena Furniture Liquidators and Individually; and Stacy Scott, as Police Officer for the City and Individually; Appellees.

No. 14–03–00166–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 9, 2004.

Michael Gleason, Houston, pro se.

E. Katherine Strahan, Kendall Matthew Gray, Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices FROST and GUZMAN.

## ORDER

PER CURIAM.

On June 21, 2004, appellant filed a "tentative interim partial motion for rehearing en banc." On June 25, 2004, appellant filed a motion to withdraw and correct his inappropriate tentative interim partial motion for rehearing en banc. At the same time, appellant filed a motion to extend time to file a motion for rehearing en banc. *See* TEX.R.APP. P. 49.8. On August 16, 2004, appellant filed a motion to exceed the 15–page limit and file a 50–page motion for rehearing. *See* TEX.R.APP. P. 49.10. The court denied the motion on August 26, 2004. On August 30, 2004, appellant filed a motion for a second extension of time to file his rehearing.

The court GRANTS leave to withdraw appellant's tentative interim partial motion for rehearing en banc and ORDERS the motion withdrawn. The court GRANTS appellant's motion for extension of time and motion for second extension of time to file his motion for rehearing and rehearing en banc. Appellant's motion for rehearing and motion for rehearing en banc are due on or before **September 24, 2004. NO FURTHER EXTENSIONS WILL BE GRANTED ABSENT EXCEPTIONAL CIRCUMSTANCES.**

FROST, J. files a concurring and dissenting opinion.

KEM THOMPSON FROST, Justice, concurring and dissenting.

I respectfully concur in the granting of appellant Michael Gleason's motion to strike or withdraw "Appellant's Tentative Interim Partial Motion for Rehearing En Banc," but I respectfully disagree with the court's granting of his motion for an extension of time to file another motion for rehearing. I write to explain the reasons for this disagreement and to address the important and seldom-discussed responsibility of pro se litigants to act with dignity, respect, and civility in their dealings with

courts, counsel, and other participants in the legal system.

## BACKGROUND

This case was submitted without oral argument on May 10, 2004. In a unanimous opinion issued on June 3, 2004, a three-member panel of this court affirmed the trial court's summary judgment against appellant. On June 21, 2004, appellant filed "Appellant's Tentative Interim Partial Motion for Rehearing En Banc," [1] in which he characterizes the panel's opinion as "disingenuous, dishonest[,] and retaliatory" as well as "false, corrupt[,] and fraudulent." Appellant's motion is rife with personal insults and contains conclusory allegations of corruption and criminal conduct by the court and its staff. In his motion for rehearing, appellant also attacks the integrity and character of the Chief Justice and the other panel members who heard this case.[2] The motion states, among other things, that the panel's opinion contains "sham reasons" for the court's ruling and constitutes "unlawful [,] unprofessional [,] and unethical judicial and attorney retaliation." Appellant also accuses the court of creating precedent "to retaliate against future pro se and politically incorrect litigants." Appellant states that the court's opinion "invites systemic attorney and judicial corruption, and promotes general blatant dishonesty." Appellant accuses the court of "misrepresenting" or

"fraudulently misrepresenting" more than a dozen times in his motion for rehearing, but does not identify a single alleged misrepresentation or inaccuracy in the panel's recitation of the facts or the issues. Appellant concludes his motion with the following testimonial:

> I suggest that practicing attorneys be asked whether they have had cases where the judge's statement of facts were false. Every practicing attorney to whom I have asked this question has responded in the affirmative; some have told me that the practice is, unfortunately, quite common, and that judicial misrepresentation of facts of cases has produced a crisis in their professional lives. They feel that their work is subject to the whim of judges who play God with the facts of a case, changing them to make the case come out the way the judge desires.

Appellant now asks the court to strike his motion for rehearing or allow him to withdraw it. In his motion to withdraw, appellant states that he "apologizes for the inappropriate, disrespectful criticisms of the Court included in his panic driven attempt to quickly formalize his disappointment and disagreement with the Court's opinion in this appeal." Appellant filed, concurrently with his motion to withdraw, a separate motion for extension of time.

---

1. In his motion for rehearing en banc, appellant (1) complains generally about the panel's disposition of his issues on appeal, (2) asks the court to grant en banc review in order to vacate the panel's order denying his request to file a 130–page appellant's brief, and (3) requests the court to reconsider its denial of oral argument in the case.

2. The following excerpt is one of several personal attacks in appellant's motion:
   The corrupt and fraudulent opinion also defames and discredits the entire Texas legal profession and judiciary, the legal sys-

tem and the justice they have a sworn duty to administer. The sham, fraudulent opinion and its compromise of the new Chief Justice is not secret. Its corruption is now known by the panel and its staff, the defendant attorneys, $M West, retired Judge Work, the Harris County Court House rumor mill, defendants' four (4) retained attorneys and their supervisors and superiors at Andrews & Kurth, the Andrews & Kurth rumor mill, the Houston Bar rumor mill, etc., etc.

In that filing, appellant explains the need for more time, stating:

> Because of the unusual challenge presented by the Court's seemingly bad faith, frivolous opinion, extensive and intensive research time in the public law libraries and efforts to obtain counsel ... will be required to prepare a meaningful response.

In the motion for extension of time, appellant makes remarks similar to those contained in the motion for rehearing he has asked to withdraw, including the following:

> ... [Appellant] will attempt to type an emergency tentative draft of the first impression, preliminary issues of his proposed motion for rehearing en banc in order to have, at least, these preliminary issues included in the record in case the Court's retaliation against appellant's objections to its seemingly bad faith, frivolous opinion is as unreasonable and vicious as its retaliation against appellant's objections to the general fraud and corruption of defendants' motion for summary judgment and the dishonest attorneys and witnesses who prepared and presented it to the trial court and to this Court.
>
> ...
>
> The very unusual issues of seemingly judicial and court's staff attorney fraud and professional misconduct here will surely require very intensive and innovative research ...

In the motion for extension of time, appellant again accuses this court and its staff of corruption, criminal conduct, and other improprieties of a serious nature. As before, appellant's filing contains inflammatory rhetoric that is disrespectful and inappropriate.

This recent round of filings is not the first time appellant has crossed the line between zealous advocacy and inappropriate conduct. Many of his previous filings in this court contain disparaging personal remarks and invective directed to judges, lawyers, and parties involved in this litigation. Though not a lawyer, appellant should have been aware of the boundaries of appropriate conduct. By his own admission, appellant has exceeded them.

In keeping with the tone and character of his previous filings in this court, in his motion for rehearing, appellant does not focus on the merits of the case or the legal issues involved, but instead uses this as a platform to launch personal attacks on virtually everyone involved in the case—including opposing parties and counsel, the trial judge who ruled against him in the court below, the appellate justices that decided his case on appeal, and even the clerk's office and the court's professional staff. Rather than direct his motion for rehearing to the court's holding, logic, rationale, or factual recitation, appellant has instead engaged in rampant and indiscriminate name-calling and vitriol. The statements in appellant's motion for rehearing are entirely inappropriate, a fact which appellant himself acknowledges in his motion to withdraw his motion for rehearing.

### RESPONSIBILITIES OF THE PRO SE LITIGANT

Appellant's brief, his motion for rehearing, his motion for extension of time, and even his motion to withdraw and his "apology" are rife with inappropriate, offensive, and intemperate comments. This incivility and lack of decorum reflects a fundamental disrespect for our legal system and all who participate in the legal process. The ethical rules require lawyers to demonstrate respect for the legal system and those who serve it. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT preamble 4, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Vernon 1998). Though non-lawyers, such as appellant, are not subject to the Texas

Disciplinary Rules of Professional Conduct, their demeanor and conduct as pro se litigants should be measured by the same standard. *See LaGoye v. Victoria Wood Condo. Ass'n,* 112 S.W.3d 777, 787 (Tex. App.-Houston [14th Dist.] 2003, no pet.) (stating pro se litigants are "held to the same standards as licensed attorneys....."). Pro se litigants have no less of an obligation than lawyers to act with respect and civility in their dealings with the court and those who participate in the legal process. *See Mansfield State Bank v. Cohn,* 573 S.W.2d 181, 184–85 (Tex.1978) (stating that " '[t]he right of self-representation is not a license to abuse the dignity of the courtroom' ") (quoting *Faretta v. California,* 422 U.S. 806, 835 n. 46, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975)). Likewise, judges have no less of an obligation to safeguard the integrity of the public courts from the unruly and contumacious behavior of pro se litigants than they do to protect the court and legal system from unprofessional conduct of counsel.

Judges are the guardians of the court as an institution and so they must insist that all who come before the court act with dignity, decorum, and respect. Even though judges, on a personal level, might be willing to suffer insults and personal attacks like those contained in appellant's filings, they must, by virtue of their office, protect the dignity of the court from such offensive and unacceptable conduct. As individuals, the justices of this court may not have garnered appellant's respect or esteem, but, we must, as judges, demand respect for this court as an institution. The Fourth Court of Appeals, sitting en banc, explained this important obligation, stating:

> A distinction must be drawn between respectful advocacy and judicial denigration. Although the former is entitled to a protected voice, the latter can only be condoned at the expense of the public's confidence in the judicial process. Even were this court willing to tolerate the personal insult levied by [counsel], we are obligated to maintain the respect due this Court and the legal system we took an oath to serve.

*In re Maloney,* 949 S.W.2d 385, 388 (Tex. App.-San Antonio 1997, no writ) (en banc) (per curiam).

Unquestionably, litigants and counsel have the right (and sometimes the responsibility) to criticize judges and their rulings. But when doing so in a court proceeding, they should speak and write civilly, using language that is respectful of the courts and our system of justice, because, in addition to performing judicial functions, judges serve as symbols of both the judicial system and the administration of justice.[3] The public's perception of the legal process is greatly influenced by the tone and decorum of the proceedings. Conduct that offends the dignity of the legal process undermines the image of our justice system and compromises its credibility in the eyes of the public.

As guardians of the public's confidence in our legal system, judges must maintain a strong commitment to both inspire and demand the highest standards of civility and personal behavior from litigants and lawyers appearing in the courts of this state. For those appearing in appellate courts, these standards are embodied in the *Standards for Appellate Conduct,* which were adopted and promulgated by the Texas Supreme Court and the Court of

---

**3.** *See The Texas Lawyer's Creed,* IV(1) ("I will always recognize that the position of judge is the symbol of both the judicial system and administration of justice. I will refrain from conduct that degrades this symbol.").

Criminal Appeals.[4] Primarily aspirational, the *Standards for Appellate Conduct* do not alter the existing standards of conduct under the Texas Disciplinary Rules of Professional Conduct, the Texas Rules of Disciplinary Procedure, or the Code of Judicial Conduct, but they set forth the basic standards of behavior expected in Texas appellate courts. By levying intemperate and demeaning personal attacks against the panel members who heard his case and acting with incivility in his dealings with this court, appellant has violated these standards. Moreover, appellant has demonstrated a pattern of abusive and inappropriate conduct directed not only to the justices of this court but to other participants in the legal process as well.

In addition to repeatedly denigrating members of this court, appellant has unleashed similar attacks on appellees[5] and their counsel,[6] as well as the trial judge[7]

4. *See* Misc. Docket No. 99–9012, Order of the Supreme Court of Texas and the Court of Criminal Appeals.

5. In "Appellant's First Amended Brief," appellant refers to appellees as "[c]orrupt, [m]ean spirited [g]overnment [o]fficials." Appellant's brief further states:

How many "dispicable" personal lies about p and about the issues of ds' undisclosed evid. of this case did the Isbell campaign's $M consigliere and bagman add, off the record, to the myriad of formal "dispicable" lies in their unretracted, now eighteen (18) month old ds' mtn.s.j.?

Would Pasadena's Boasted "Roy Bean" Surrogate Lie To Slander Plaintiff? He did, but the trial court wouldn't enforce p's discovery and continuance requests needed to examine "THE LAW" and witnesses to his oral "Bean" flautulence.

The trial court was a model of this firm fairness until Isbell/West's $M election day drew nearer. If d Isbell and his sponsor, "$M SANCTION" West were as principled as they arrogantly portray themselves, they would not have authorized the dispicable fraudulent ds' mtn. s.j. to be prepared and filed in "their" name.

In "Appellant's Motion to Exceed Page Limits," filed August 16, 2004, appellant states that "Defendants' poor mothering ... is the root cause of all this folderol and excessive billing."

6. For example, in "Appellant's Verified Motion to Postpone Submission and Demanding Oral Argument to the Court," appellant refers to appellee's counsel as "defendants' latest corrupt, unethical defendants' attorney IV" and to one of appellees' lawyers as an "unprincipled, corrupt and dishonest young attorney." In this same filing, appellant states:

... [D]efendants' attorney IV maintains the unethical recidivist corrupt Pasadena public official and 'Judge Roy Bean' tradition by relying on the Nazi propagandist, Joseph Goebbels' tactic that repeating the shams, fabrications and lies of defendants' motion for summary judgment will unethically persuade the Court ...

7. Though not an issue on appeal, in appellant's reply brief, appellant accused the trial judge of "political or personal bias." In "Appellant's Verified Motion to Postpone Submission and Demanding Oral Argument to the Court," appellant made personal attacks on the trial judge's character and integrity, stating:

... Judge Work ignored plaintiff's objections and critical analysis and accepted defendants' attorney I's obvious fabrications and misrepresentations—apparently as a professional courtesy to an unprincipled, corrupt and dishonest young attorney and his influential law firm.

In other filings, appellant accused the trial judge of all sorts of nefarious motives for the trial court's rulings. For example, in "Appellant's Verified Motion to Postpone Submission and Demanding Oral Argument to the Court," appellant states:

As noted, in rebuttal, even Judge Work himself wrote and stated several substantial misrepresentations, which weren't considered material until defendants' attorney IV decided to use this personal and professional moral weakness of Judge Work to bolster his fraudulent misrepresentations to this Court.

... [T]he [trial] Court granted defendants several very "liberal," and even "exparte [sic]," extensions and trial continuances to enable them to try to get their sham, fabri-

that entered judgment against him in the court below. Although parties are "granted great latitude in presenting arguments in an appellate court," when they "speak disrespectfully of the trial court, they 'exceed their rights and evidence a want of proper respect for the court....'" *Johnson v. Johnson*, 948 S.W.2d 835, 840–41 (Tex.App.-San Antonio 1997, writ denied) (quoting *Mossop v. Zapp*, 179 S.W. 685 (Tex.Civ.App.-Galveston 1915, no writ)). The appellate courtroom is not the forum to vent personal grievances against the trial judge that decided the case or the appellate panel that reviewed it. And it is certainly not the proper venue for accusations of criminal conduct, corruption, or professional misconduct on the part of the judges and lawyers involved in the case.

Furthermore, ad hominem attacks on courts, opposing parties, or opposing counsel are ineffective and inappropriate, whether made by attorneys or pro se litigants. *See Lookshin v. Feldman*, 127 S.W.3d 100, 107 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (stating "this Court will not allow the appeals process to be used by a litigant to make ad hominem attacks on an opposing party...."); *Johnson*, 948 S.W.2d at 840 (stating ad hominem attacks against judges who have rendered an adverse decision are both ill-advised and improper). There is no justi-fication for personal attacks in the courts of this state. As a pro se litigant, appellant's role was to present legal arguments to the court, not to humiliate, shame, embarrass, demean, or insult opposing counsel or parties. Like the statements denigrating judges, personal attacks on other litigants and their lawyers also demonstrate a lack of respect for the legal system and the administration of justice.[8]

Pro se litigants, like parties represented by counsel, should focus on legal points, not personalities or perceived character flaws. Litigants should not assail the intelligence, ethics, morals, upbringing, or integrity of others involved in the case unless such matters are legitimately at issue and within the bounds of fair argument. Even then, litigants should avoid the use of inappropriate language and inflammatory rhetoric.[9] Restraint, tolerance, and self-control tend to foster civility. Name-calling, stridency, and rudeness have the opposite effect. Incivility does not advance a litigant's legal position, but only tends to eclipse or obscure whatever legal points he intended to make. Incivility is not only ineffective but also ill-advised. At a minimum, courts and those appearing before them expect and deserve civility and courtesy from all participants in the legal process.[10]

cated, contradictory 'fairy tale' motion for summary judgment invented, suborned and drafted."

In "Appellant's Motion to Exceed Page Limits," filed August 16, 2004, appellant refers to the trial court's ruling as a "'Star Chamber' judgment."

**8.** *See Standards for Appellate Conduct*, "Lawyers' Duties to Lawyers," 1 ("Counsel will treat each other and all parties with respect."); *Standards for Appellate Conduct*, "Lawyers Duties to the Court," 10 ("Counsel will not permit a client's or their own ill feelings toward the opposing party, opposing counsel, trial judges or members of the appellate court to influence their conduct or de-meanor in dealings with the judges, staff, other counsel, and parties.").

**9.** *See Standards for Appellate Conduct*, "Lawyers' Duties to Lawyers," 5 ("Counsel will not make personal attacks on opposing counsel or parties."); *The Texas Lawyer's Creed*, III. 10. ("I will avoid disparaging personal remarks or acrimony towards opposing counsel ... [and] parties.").

**10.** *See Standards for Appellate Conduct*, "Lawyers Duties to Clients," 9 ("Counsel will advise their clients of proper behavior, including that civility and courtesy are expected."); *Standards for Appellate Conduct*, "Lawyers

Inappropriate conduct and incivility threaten the pursuit and administration of justice in that they damage the public's perception of our legal system, undermine the credibility and authority of the courts, and subvert the effectiveness of the legal process. Because appellant's motion for rehearing en banc contains inappropriate comments, it is altogether proper for the court to strike it, but there is no good reason to grant appellant's motion for an extension of time to file another in its place. Although appellant has acknowledged that he has demonstrated a lack of respect for this court and has offered an "apology," there is not the slightest suggestion of any true contrition on appellant's part. His motion to withdraw hardly conveys a sincere sense of regret or respectfulness, nor do the other filings he has submitted to this court before or since. Indeed, after filing his motion to withdraw, appellant has continued to engage in the same unacceptable conduct with no indication that he will attempt to follow a different course in his future dealings with this court.

The frequency, number, and intensity of appellant's verbal onslaughts against opposing parties and their counsel, the lower court, and this court signal more than a mere lapse in judgment. Rather, they constitute a pattern of abusive and inappropriate behavior. Appellant has continued to conduct himself in this manner even after acknowledging that such conduct is inappropriate. This unacceptable behavior is an affront to the administration of justice. We should protect the effectiveness and credibility of this court and the legal process from any further recurrence of this conduct. For this reason, the court should deny appellant's request for an ex-

tension of time to file another motion for rehearing.

### CONCLUSION

Pro se litigants who come to court for justice bear an important responsibility to conduct themselves with dignity and decorum and to show respect for judges, opposing parties, counsel, and all others participating in the legal process. This court expects nothing less from appellant. Today the court grants appellant another opportunity to present his arguments on rehearing. Should appellant demonstrate in his future dealings with this court the same lack of respect and incivility that have characterized his filings in this case, such inappropriate and unacceptable conduct could subject him to serious consequences, including contempt or other sanctions.

---

Duties to the Court," 8 ("Counsel will be civil and respectful in all communications with the judges and staff.").