

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-13-00303-CV

OLGA MURRY                                                                                                APPELLANT

V.

BANK OF AMERICA, N.A.                                                                            APPELLEE

----------

FROM COUNTY COURT AT LAW NO. 1 OF TARRANT COUNTY
TRIAL COURT NO. 2013-001762-1

----------

## MEMORANDUM OPINION[1]

----------

Appellant Olga Murry, pro se, appeals from the county court's judgment in the forcible detainer case brought against her by Appellee Bank of America, N.A. In three issues, Murry argues that the county court erred by excluding Murry's evidence, by adopting Bank of America's proposed findings of facts, and by

---
[1]*See* Tex. R. App. P. 47.4.

rendering judgment for Bank of America. Because Murry has not shown error in the trial court's actions, we affirm.

Bank of America brought a forcible detainer action against Murry in the justice court. Bank of America asserted that it had purchased property at a foreclosure sale, that it had made written demand on Murry that she vacate the property, and that she had refused to vacate the property. Bank of America attached to its petition a copy of a substitute trustee's deed indicating that it had purchased the property at foreclosure. It also attached a copy of the notice it had sent to Murry. The justice court rendered judgment for Bank of America.

Murry appealed to the county court. There, she filed a verified denial and special exceptions to Bank of America's petition for forcible detainer. In her special exceptions, Murray alleged that the deed of trust under which the foreclosure sale was conducted was void because a release of lien had been filed prior to the sale. She also asserted as an affirmative defense that she had executed a "Release of Lien of the Deed of Trust," and therefore there was insufficient evidence of Bank of America's superior right to immediate possession of the property. In response to Murry's allegations about the release of lien, Bank of America pointed out that Murry had signed the release of lien herself on behalf of Bruce R. Thompson, chief financial officer for Bank of America, and it alleged that she did not have authority to act on his behalf.

2

After a trial, the county court granted judgment for Bank of America and ordered that Bank of America have possession of the property. Murry now appeals.

Murry words her first issue as follows:

> Did the trial court judge erred in applying the law when the trial attorney informs the court that Ms. Murry's evidence "is not a true certified copy as required for that," meaning the release of lien; and after Ms. Murry stated "It's in the record," and the court judge stated "Ma'am, first of all, Mr. Gonzales has produced certified copies. That's the only thing the rules of evidence allow;" AND after Ms. Murry offered the original but before the trial judge made a ruling?

From her argument under this issue, Murry appears to complain about the trial court's refusal to admit into evidence the release of lien that she had filed in the county property records. Murry asserts that she offered the original and a copy and that no one from Bank of America contradicted the release of lien.

A person commits forcible detainer if the person "is a tenant at will or by sufferance" and the person refuses to surrender possession of the property on demand.[2] A plaintiff in a forcible detainer action may show a superior right to possession by establishing that it purchased the property at a foreclosure sale conducted in accordance with a deed of trust and that the deed of trust creates a tenancy at sufferance upon foreclosure.[3] The plaintiff in that case must show

---

[2]Tex. Prop. Code Ann. § 24.002 (West 2000).

[3]*See Aguilar v. Weber*, 72 S.W.3d 729, 733 (Tex. App.—Waco 2002, no pet.) (observing that courts have held that a forcible detainer action is dependent on proof of a landlord-tenant relationship).

that "(1) the plaintiff owns the property, (2) the defendant became a tenant at sufferance when the property was purchased under the deed of trust, (3) the plaintiff gave proper notice to defendant to vacate the premises, and (4) the defendant refused to vacate the premises."[4]

A forcible detainer action "is intended to be a speedy, simple, and inexpensive means to obtain immediate possession of property."[5] In furtherance of that intention, under former civil procedure rule 746 (which applies to this case), in a forcible detainer suit, the only issue is the right to possession, and "the merits of the title shall not be adjudicated."[6] Thus, any questions about defects in the foreclosure process or "[w]hether the sale of property under a deed

---

[4]*Brittingham v. Fed. Home Loan Mortg. Corp.*, No. 02-12-00416-CV, 2013 WL 4506787, at *1 (Tex. App.—Fort Worth Aug. 22, 2013, pet. dism'd w.o.j.) (mem. op.) (applying property code section 24.002).

[5]*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 919 (Tex. 2013) (citation omitted).

[6]Tex. R. Civ. P. 746 (West 2013, repealed 2013); *see Nalle Plastics Family Ltd. P'ship v. Porter, Rogers, Dahlman & Gordon, P.C.*, 406 S.W.3d 186, 208 n.18 (Tex. App.—Corpus Christi 2013, pet. denied) (setting out the text of former rule 746, which provided that "[i]n case of forcible entry or of forcible detainer under Sections 24.001–24.008, Texas Property Code, the only issue shall be as to the right to actual possession; and the merits of the title shall not be adjudicated"). The Supreme Court of Texas repealed this rule in 2013, but because the judgment in this case was rendered prior to August 31, 2013, that rule applies. *See* Supreme Court of Tex., Final Approval of Rules for Justice Court Cases, Docket No. 13-9049, (Apr. 15, 2013) (adopting new procedural rules for eviction cases and repealing former rule 746). The new rules adopted by the Supreme Court contain the same restriction. *See* Tex. R. Civ. P. 510.3(e) (stating that "[t]he court must adjudicate the right to actual possession and not title").

4

of trust is invalid may not be determined in a forcible detainer and must be brought in a separate suit."[7]

The release of lien, even if valid, is relevant only to whether the foreclosure sale was proper. It does not have relevance to the question of whether Bank of America bought the property at a foreclosure sale. It does not relate to any of the other elements that Bank of America had to establish to prevail in its forcible detainer claim. Accordingly, the evidence that Murry sought to have the trial court consider was irrelevant, and the trial court did not abuse its discretion by not admitting it or considering it.[8]

Also under her first issue, Murry argues that in her special exceptions, she had excepted that Bank of America lacked the capacity to sue. She contends that Bank of America therefore lacked standing.

Capacity and standing are related but distinct doctrines.[9] On appeal, Murry does not explain why Bank of America did not have capacity to sue for forcible detainer. Accordingly, this argument is inadequately briefed.[10] We overrule Murry's first issue.

---

[7]*Shutter v. Wells Fargo Bank, N.A.*, 318 S.W.3d 467, 471 (Tex. App.—Dallas 2010, pet. dism'd w.o.j.).

[8]*See* Tex. R. Evid. 401, 402.

[9]*See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848–49 (Tex. 2005).

[10]*See* Tex. R. App. P. 38.1(i).

In her second issue, Murry argues that the county court abused its discretion by adopting Bank of America's proposed findings of fact. She maintains that the findings conflict with the reporter's record in that the findings state that Gonzales is a licensed attorney, but the license number listed in the reporter's record is not the proper number for Gonzales and is actually his telephone number. She argues that she challenged Gonzales's authority to act under rule 12 of the rules of civil procedure, and "there is not a licensed number for Mr. Gonzales on the court reporter's record."

Murry also challenges Gonzales's authority to represent Bank of America. She argues that she "challenged Mr. Gonzales after being sworn in and before the court reporte[r] started transcribing the cause of action."

Civil procedure rule 12 states that "[a] party in a suit or proceeding . . . may, by sworn written motion stating that he believes the suit or proceeding is being prosecuted or defended without authority, cause the attorney to be cited to appear before the court and show his authority to act."[11] The rule further provides that "[t]he notice of the motion shall be served upon the challenged attorney at least ten days before the hearing on the motion."[12]

Murry acknowledges that she did not file a written motion, but she asserts that "the matter was addressed at trial; and the outcome—there is not a licensed

[11]Tex. R. Civ. P. 12.

[12]*Id.*

6

number for Mr. Gonzales on the court reporter's record."  She points out the moment of the trial when Bank of America passed its witness, and the trial court asked Murry if she had any questions, and the following exchange occurred:

THE COURT:  Do you have any questions of him, Ms. Murry?

MS. MURRY: Well, I have all my stuff over there, because I thought we were just going to go over whether he had—

THE COURT:  Do you have any questions for him?

MS. MURRY:  No, I do not, Your Honor.

Even to the extent that this statement could be construed as an objection to Gonzales's authority, Murry did not file a written motion as required by rule 12. She cites no authority and makes no argument about why she was not required to do so or why the trial court erred by not considering the matter without a proper written motion.[13]

Regarding her argument about Gonzales's bar number, Murry appears to object to the trial court's finding that Gonzales was "hired as an independent contractor for the law firm of Mackie Wolf Zientz & Mann P.C.  He w[as] hired by the firm to argue this matter on behalf of [MWZM's] client, Bank of America, N.A." We note that a bar number for Gonzales appears in the clerk's record.  And Murry does not explain how the reporter's inclusion in the reporter's record of an incorrect bar number for Gonzales is reversible error.[14]

---

[13]*See* Tex. R. App. P. 38.1(i), 44.1.

[14]*See* Tex. R. App. P. 38.1(i), 44.1.

7

Murry then argues that "Gonzales could not have made an 'Appearance' without proper notice and verification to prosecute or defend the cause of action," and she contends that she was not provided "written notice as required by [civil procedure rule] 21a to the court clerk or Appellant." Without any citation to authority or further explanation provided by Murry, we can only guess at the basis for her argument, which appears to be an objection that she did not receive notice as required under civil procedure rule 8.[15] We have already noted that Murry did not file a written motion challenging Gonzales's authority to act for Bank of America in the trial court. We also do not find any objection in the trial court by Murry to Gonzales's appearance. Gonzales was working for the same law firm as the attorney in charge for Bank of America, Murry did not object to Gonzales's appearance, and she does not explain or cite any authority for how she was harmed by Gonzales's appearance.[16] We overrule Murry's second issue.

In her third issue, Murry asks whether "the trial court abuse[d] its discretion in judgment when the judge acquiesced to [Murry's] Formal Bill of Exception or the Informal Bill of Exception." In her summary of argument, Murry states that

---

[15]Tex. R. Civ. P. 8 (stating that if the designation of the attorney in charge of representation of a party changes, "until such designation is changed by written notice to the court and all other parties in accordance with Rule 21a, said attorney in charge shall be responsible for the suit as to such party").

[16]*See Sunbeam Envtl. Servs., Inc. v. Tex. Workers' Comp. Ins. Facility*, 71 S.W.3d 846, 851 (Tex. App.—Austin 2002, no pet.).

she filed two bills of exceptions: "a formal bill that identifies the events that led to the judgment" and "the informal bill that identifies the evidence that the trial judge refused to admit into evidence when offered. Both bills were not refused by the trial judge."

After the trial court signed the judgment, Murry filed two documents with the court clerk: one entitled "informal bill of exceptions," and one called "formal bill of exceptions." The informal bill of exceptions has exhibits attached, including a copy of the release of lien. Murry's brief does not contain any more explanation about why she believes the trial court abused its discretion by allowing her to file these documents or how she was harmed by the trial court's action.[17]

Murry also complains under this issue about the trial court's refusal to accept the release of lien into evidence upon Bank of America's objection that it was not a true certified copy. She argues that she notified the trial court that the true certified copy was already in the record and that she subsequently offered the original.

Murry points out that to obtain a reversal of judgment based upon a trial court's decision to exclude evidence, she must show that the error probably caused the rendition of an improper judgment.[18] Murry does not, however,

---

[17]See Tex. R. App. P. 38.1(i), 44.1.

[18]See Tex. R. App. P. 44.1.

9

explain how the exclusion of the evidence probably caused the rendition of an improper judgment. And as we explained under her first issue, this evidence was not relevant in the forcible detainer suit.

Murry also argues under this issue that fact finding 3k "cannot be taken as fact because the response requires an affidavit attesting to the validity that it alleges" and that finding 3f "states that Plaintiff requested that Defendant post a supersedeas bond, when in fact it was Defendant that requested the judge issue the bond." She does not however, include any argument or explanation why the trial court's findings require a reversal of the judgment.[19] We overrule her third issue.

Before concluding our opinion, we must address comments made by Murry in her reply brief. In that brief, Murry attacks the integrity of the trial court and the law firm representing Bank of America. Murry states that her "claim has merit[,] it is to expose the witness [who testified for Bank of America] for posing as a[n] attorney in the Justice of the Peace Court trial and discredit him as a witness," and to expose Gonzales and the judge of the trial court for lying under oath. She further states that Bank of America's attorney and the judge were parties to racketeering and fraud. She also quotes a Bible verse stating that "[a] false witness will not go unpunished."

---

[19] *See* Tex. R. App. P. 38.1(i), 44.1.

10

Murry's comments in her brief indicate that she does not understand the role of the judge and of the attorneys at trial, and as a result, she has confused normal legal procedures with criminal activity. We will not address the substance of her comments, which are without merit. But we include here the comments of a justice at our sister court regarding the conduct of pro se litigants:

> This incivility and lack of decorum reflects a fundamental disrespect for our legal system and all who participate in the legal process. The ethical rules require lawyers to demonstrate respect for the legal system and those who serve it. Though non-lawyers, such as [A]ppellant, are not subject to the Texas Disciplinary Rules of Professional Conduct, their demeanor and conduct as pro se litigants should be measured by the same standard.

> . . .

> Judges are the guardians of the court as an institution and so they must insist that all who come before the court act with dignity, decorum, and respect. Even though judges, on a personal level, might be willing to suffer insults and personal attacks like those contained in appellant's filings, they must, by virtue of their office, protect the dignity of the court from such offensive and unacceptable conduct.

> . . .

> Unquestionably, litigants and counsel have the right (and sometimes the responsibility) to criticize judges and their rulings. But when doing so in a court proceeding, they should speak and write civilly, using language that is respectful of the courts and our system of justice, because, in addition to performing judicial functions, judges serve as symbols of both the judicial system and the administration of justice.

> . . .

> In addition to repeatedly denigrating members of this court, appellant has unleashed similar attacks on appellees and their counsel, as well as the trial judge that entered judgment against him in the court below. Although parties are "granted great latitude in

11

presenting arguments in an appellate court," when they "speak disrespectfully of the trial court, they 'exceed their rights and evidence a want of proper respect for the court. . . .'" The appellate courtroom is not . . . the proper venue for accusations of criminal conduct, corruption, or professional misconduct on the part of the judges and lawyers involved in the case.

> . . .

> Pro se litigants who come to court for justice bear an important responsibility to conduct themselves with dignity and decorum and to show respect for judges, opposing parties, counsel, and all others participating in the legal process. This court expects nothing less from [A]ppellant.[20]

This court also does not demand that an appellant respect the trial judge as an individual, but we demand respect for the judiciary as an institution.[21] Murry is understandably distraught over being evicted from what was once her home. But we nonetheless expect her to conduct herself with dignity and to show respect for the trial judge and opposing counsel in proceedings in this court.

Having overruled Murry's three issues, we affirm the trial court's judgment.

---

[20]*Gleason v. Isbell*, 145 S.W.3d 354, 357–61 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (Frost, J., concurring in part and dissenting in part) (citations and footnotes omitted).

[21]*Id.* at 358.

                                           /s/ Lee Ann Dauphinot
                                           LEE ANN DAUPHINOT
                                           JUSTICE

PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

DELIVERED:  August 7, 2014